Orton vs. McCord.

ORTON VS. McCORD.

REFEREE: (1) *Judgment upon report of, when affirmed.* (2) *Judgment of this court an original judgment.*
EVIDENCE: (3) *Statements to an attorney, when privileged.*
CONTRACT: (4) *Consideration.*

1. Where a cause is tried before a referee, whose report, with his findings of fact and conclusions of law, is confirmed by the court below, this court, if it is satisfied from the whole evidence that it would not be justified in reversing such findings of fact, and if there is no error in the conclusions of law thereon, and if there was no testimony offered by the appellant and improperly rejected by the referee, will affirm the judgment, regardless of other errors which may have occurred in the trial before the referee.

2. In such a case, exceptions being duly taken for the purpose, there is a fresh trial in this court upon the evidence taken by the referee, and the judgment here is in the nature of an *original* judgment; though, if the testimony is evenly balanced, or cannot fairly be said to preponderate against the decision of the court below, that decision will not be disturbed.

3. Where defendant's rights were in fact contested, and his interests put in jeopardy (though he was not nominally a party), in a certain suit brought against his copartner, declarations relative to the subject matter of that suit, made by him to the attorney retained by his copartner, were properly regarded by the referee herein as *privileged*, and the testimony of the attorney in relation thereto ruled out; especially as the attorney stated as his opinion that such communication was privileged, implying that he regarded defendant as having stood to him in the relation of a *client* when the same was made.

4. R., knowing that X. & Y. were willing to sell their business as bankers, etc., for $5000, made an oral agreement with A. & B. that the latter should purchase such business for that sum, and furnish money to

continue it in their name, and employ R. to conduct it at a salary of one-third the net profits. While A. & B. were negotiating with X. & Y. for such purchase, R., having quarrelled with A., withdrew from the arrangement, asking the privilege of introducing some one in his stead, but without any agreement by A. & B. to make the same arrangement as to profits with the person to be introduced. R. then told M., that he *had bought the business* of X. & Y., and had let A. & B. have a two-thirds interest, himself retaining one-third, they to furnish the capital, and he to conduct the business for one-third of the net profits; and he made a verbal offer to M. to sell his (R.'s) interest for $3,333, one-half to be paid to him, and the other half to X. & Y. or A. & B., which offer M. verbally accepted, and was introduced by R. to A. & B. Afterwards X. & Y. sold their business to A., who purchased for himself and B. and M., and these three formed a partnership, each to pay one-third of the purchase money, A. & B. to furnish all necessary capital, and M. to manage the business and have a one-third interest. In an action by R.'s assignee against M., to recover $1,666 upon the aforesaid oral agreement between them: *Held*, that there was *no consideration* for M.'s promise to R.

APPEAL from the Circuit Court for *Milwaukee* County.

*Orton* brought his action against *McCord* to recover upon an alleged contract for a money demand, assigned to plaintiff by one Robinson. The complaint alleged that Robinson entered into a negotiation with Price Brothers & Co. for the purchase of their business as bankers and exchange brokers, for the sum of $5,000; that Robinson then contracted with Goodrich & Rumsey to take said business for the sum named, and furnish money to continue it in their name, employing Robinson to conduct it, at a salary of one-third the net profits, and that Goodrich & Rumsey carried out the bargain made by Robinson with Price Brothers & Co.; that a difference arose between Goodrich and Robinson, resulting in a request that he should find some one to carry on the business in his stead, with whom Goodrich & Rumsey would make the same agreement touching division of profits as with Robinson; that Robinson then made an agreement with the defendant, *McCord*, by which the latter promised to pay $3,333.33 for such interest in the business of

Price Brothers & Co. as would give him one-third of the profits therein, one-half this amount to be paid to Robinson; that Robinson thereupon introduced *McCord* to Goodrich & Rumsey, who, at Robinson's request, agreed with *McCord* to furnish capital to carry on the business, and give him one-third interest therein, in consideration that he should pay one-third of the $5,000 to Price Brothers & Co., and would undertake to conduct the business as they had agreed with Robinson; that Price Brothers & Co. afterwards assigned their business to Goodrich & Rumsey, who with *McCord* then conducted the business, Goodrich & Rumsey furnishing the capital, and *McCord* taking charge of the business; that Robinson demanded of defendant the $1,666.66, being the excess agreed to be paid him by *McCord*, which the latter refused to pay; that Robinson afterwards, and before suit brought, assigned the claim to plaintiff, who still held it; and that it was unpaid. The answer denied all the allegations of the complaint.

The case was heard before a referee. Certain questions put by the plaintiff to E. Mariner, Esq., as a witness in the cause, were ruled out on the ground that they called for privileged communications made to the witness as a lawyer. The referee found the following facts: that Robinson had some communication with one member of the firm of Price Brothers & Company, from whom he ascertained that the firm were willing to sell their business for about $5,000, but that no bargain for the sale thereof was made between the firm and Robinson; that Robinson informed Goodrich of the price at which the business could be obtained, and made a virtual arrangement with him that he and Rumsey should negotiate for the business, and if they purchased it, should furnish the capital to conduct it, employing Robinson to manage the business, for a salary of one-third the net profits; that Price Brothers & Co., by an agreement in writing, conveyed the business to Goodrich individually for $5,000; that, pending negotiations for the business, Goodrich and Robinson quarreled,

and the latter withdrew from the arrangement, asking the privilege of introducing some one in his stead, but that Goodrich & Rumsey did not request him so to do, and did not agree to make the same arrangement as to profits with the person to be introduced by Robinson; that Robinson told defendant he had bought the business, and had let Goodrich & Rumsey have a two-thirds interest, himself retaining one-third, they to furnish necessary capital, and he to conduct the business for one-third of net profits; that Robinson made a verbal offer to defendant to sell his interest in the business for $3,333.33, half to be paid to Price Brothers & Co., or Goodrich & Rumsey, and half to Robinson, which offers defendant verbally accepted, and Robinson introduced defendant to Goodrich; that Robinson never had any interest in the business; that after the introduction, Goodrich, Rumsey and defendant purchased the business, through Goodrich, for $5,000, and formed a partnership, each to pay one third of the purchase money, Goodrich and Rumsey to furnish all necessary capital to carry on the business, and defendant to manage it; that this agreement between Goodrich, Rumsey and defendant was neither made at the request of nor brought about by Robinson, but was an original agreement between them for a copartnership, and for the joint purchase by them of the business of Price Brothers & Co., who were at that time sole owners thereof, and had not sold or contracted to sell to any one; that Goodrich, Rumsey and defendant paid the money and took possession of and continued the business; that Robinson assigned his claim to plaintiff, but that the agreement with defendant alleged in the complaint was not proven by the evidence, and that Robinson neither delivered or caused to be delivered to the defendant any interest in the business. The referee accordingly found for the defendant, and that judgment should be rendered dismissing the complaint. The report and findings of the referee were confirmed by the court, and judgment was rendered for defendant, from which plaintiff appealed.

Orton vs. McCord.

*J. J. Orton*, appellant, in person, to the point that the court erred in excluding the questions asked of the witness Mariner which were excluded on the ground of professional privilege, insisted that there was no sufficient foundation to show that the relation of attorney and client existed between the witness and *McCord*, citing 1 Greenl. Ev., secs. 240, 244; 1 Myl. & K., 97.

*Newton S. Murphey*, contra, contended that to warrant the referee in excluding the evidence of Mariner as to the conversations between himself and *McCord*, on the ground of privileged communications, it was not necessary that a retainer should have been charged or paid. If a question is put by a layman to a lawyer, for the purpose of obtaining information which a lawyer only can give, or is presumed to know, it is privileged, regardless of whether a suit is contemplated. 1 Greenl. Ev., secs. 237–240.

DIXON, C. J.   The referee found that Robinson, the assignor of the plaintiff, never had any interest in the property, good will, or business of Price Bros. & Co; that he had purchased no such interest at the time he applied to the defendant representing that he had, and proposing to let the defendant in as a party in his (Robinson's) place to the agreement; and that no such purchase had been made or agreement entered into at the time he introduced the defendant to Goodrich. The referee further found that such purchase was afterwards made from Price Bros. & Co., by Goodrich, Rumsey and the defendant, but not at the instance or request of Robinson, nor through him directly or indirectly, but as an original agreement for the purchase by the purchasers as copartners. As conclusions of law the referee found that there was a material variance between the agreement of the defendant as stated in the complaint, and as it appeared from the evidence, and that the pretended consideration for the agreement as shown by the evidence was false in fact, and wholly failed, and therefore the said agreement of the

defendant became and was void and of no binding obligation upon him. The report of the referee, with his findings and conclusions of law, was ratified and confirmed by the circuit court.

If from the whole evidence we are satisfied that the referee was right in his finding of facts as above stated, or if the evidence is such as in our judgment not to justify us in reversing his finding and declaring him to have been in error, and if in addition there was no testimony offered by the plaintiff and rejected by the referee which should have been received, then it is manifestly our duty to affirm the judgment upon the facts of the case so found and reported, regardless of any errors which may have occurred or exceptions which may have been taken by the plaintiff upon or during the trial before the referee. If upon all the testimony, and we have it all here, which was properly offered and receivable on the part of the plaintiff, it appears that the referee was correct in his findings of fact, or that we can not say he was incorrect, his decision must be allowed to stand. We sit here to examine the cause and pronounce judgment on the facts as they appear to us, and not merely to scan technical irregularities and defects which may have intervened in the progress of the action through the court below. Under the statute making it the duty of this court to examine the evidence and decide the facts in cases of this description, proper exceptions for that purpose having been taken, the trial here becomes a fresh one, and the judgment in the nature of an original, the court paying such respect and no more to the decision made below, that if the testimony be evenly balanced, or if it can not be fairly said to preponderate against such decision, the same will not be disturbed.

Examining the present case in this manner, and supposing no testimony in favor of the plaintiff to have been improperly excluded, a point which will presently be considered, it is certainly impossible for us to say that the referee and the court below were wrong when they found that Robinson had no in-

Orton vs. McCord.

terest in the property, good will or business of Price Bros. & Co., as set forth in the findings; and if that was so, then the conclusion that there was no consideration for the agreement of the defendant, as shown or claimed to have been by the evidence, follows as a matter of course.    We do not merely say that the evidence in this respect is evenly balanced, for we think it preponderates in favor of the referee's finding.    Our reasons for this decision need not be particularly explained. Being a decision of mere fact, we deem it unnecessary and unprofitable to explain them.    It is enough when we say we have carefully examined the testimony, and that such is our conclusion.

The only testimony offered by the plaintiff, and which was excluded by the referee, was that of the witness Mariner.  That testimony was excluded on the ground that, being evidence of a communication made by the defendant to Mr. Mariner in his professional capacity, and whilst the defendant was advising and consulting with him as a lawyer engaged in the conducting and management of a litigation in which the defendant was pecuniarily interested, the same was privileged, and, therefore, inadmissible.    The position taken against this ruling is, that it was not shown that the defendant had formally retained Mr. Mariner, and hence the relation of attorney and client did not exist.    Mr. Mariner himself testified, as appears from the bill of exceptions, though not from the printed case : " The declarations of *McCord* to me, I think, are privileged."    The opinion of so able and accurate a lawyer as Mr. Mariner is known to be, sustained by those of the learned referee and the judge of the circuit court, ought to be very satisfactory evidence of what the law is upon a point like this.    It cannot be doubted that Mr. Mariner understood the true relation which existed between himself and the defendant better that anybody else can.    He supposed the defendant stood in the position of a client, as in truth he did, though he was not nominally connected with the litigation.    The defendant's rights were controverted and his

interests put in jeopardy in the name of Goodrich, the party defendant to the action brought by Robinson. A formal retainer of Mr. Mariner by the defendant individually, or a retainer in any other manner than by Goodrich, the copartner of the defendant, and the party defendant in that action, was unnecessary in order to establish the relation of attorney and client, or give to the communication the character of being privileged. We think it was privileged, and that the referee and court below decided correctly upon the question.

Some question is made by the plaintiff upon the taxation of costs ; but the same is so imperfectly presented by the printed case, that we are wholly at a loss to understand it. The printed case, which in other respects is quite defective, in this seems to be entirely so, and, therefore, presents nothing for our consideration.

*By the Court.* — Judgment affirmed.