PEEK & SULLIVAN *v.* BOONE.

1. Under the provisions of the act-of August 4th, 1887 (amendatory of par. 5, §3854 of the code), an attorney at law is neither compellable nor competent to testify to any matter or thing, knowledge of which he may have acquired "by reason of the anticipated employment of him as attorney" by one seeking his professional aid and advice. And this is true whether, as matter of fact, the

attorney so consulted is, or is not, afterwards employed to undertake the service concerning which the confidential communication sought to be introduced in evidence was made.

2. The verdict, though not entirely satisfactory to this court, will not be set aside, there being some evidence to support it, and it having been approved by the trial judge.

February 9, 1893.

Attorney and client. Witness. New trial. Before Judge BOYNTON. Butts superior court. February term, 1892

On rule against the sheriff, issue was formed as to whether a fund should be awarded to a mortgage *fi. fa.* in favor of Boone, or to an execution in favor of Peek & Sullivan, who alleged that the mortgage was fraudulent and was made for the purpose, known to the mortgagee, of hindering, delaying and defrauding the creditors of the mortgagor (a son of the mortgagee), and especially to avoid the debt of Peek & Sullivan. The mortgage was dated November 18, 1889, and the judgment of Peek & Sullivan was rendered on February 20, 1890. At a sheriff's sale of the property under levy, the mortgagee became the purchaser. Peek & Sullivan further contended that, in furtherance of the fraudulent scheme, the mortgagee deposited $1,000, pretending to loan it and taking the mortgage, there being no actual loan and the money being drawn out at different times and handed back to the mortgagee, this occurring during the pendency of the suit of Peek & Sullivan and shortly before they obtained judgment; and that after the sale the mortgagor set up business again with the very same property, the mortgagee being cognizant of all the facts. The jury found in favor of the mortgage *fi. fa.* Peek & Sullivan excepted to the overruling of their motion for a new trial. One of the grounds of the motion was, that the court erred in rejecting the testimony of L. L. Ray, an attorney, that, just before the mortgage in controversy was given, the mortgagor came

to see him and told him he (the mortgagor) wanted to get up something of the sort for the purpose of defeating the claim of Peek & Sullivan, then in suit; that he declined to be employed, etc. All the testimony of Ray was ruled out because he stated that all he knew about it was obtained from the mortgagor, who conferred with him with the view and for the purpose of employing him in the matter as an attorney. The motion also alleged that the verdict was contrary to law and evidence.

BRYAN & DICKEN, for plaintiff in error.

W. W. ANDERSON and WRIGHT & BECK, by brief, *contra.*

LUMPKIN, Justice.

1. The act of 1887 referred to in the first head-note provides that: "No attorney shall be competent or compellable to testify . . . to any matter or thing, knowledge of which he may have acquired from his client . . . by reason of the anticipated employment of him as attorney." Plaintiff in error insists that, as the act expressly contemplates the relation of attorney and "client" shall exist, the statute has no bearing upon the facts of this particular case. Counsel argues that, although defendant in error conferred with the attorney sought to be introduced as a witness, with a view to his employment in the matter professionally, yet, as that attorney declined to render the services solicited, and in no way represented the defendant in any of the subsequent proceedings growing out of the matter in question, the relation of attorney and client cannot be said to have ever existed between these parties. No objection, other than that stated, is urged to the exclusion of the testimony offered, so we will confine our discussion to the single point made.

We may preface our remarks by saying that, irrespective of statute, confidential communications made to an attorney under circumstances such as are disclosed by the

record now before us, have ever been regarded a proper subject for protection. " Whatever is communicated professionally by a client to his legal adviser in confidence, and with a view of obtaining professional assistance or legal guidance, is a confidential communication which is protected by law from disclosure in the trial of a cause." Hageman on Privileged Com. §1. True, to constitute such confidential communication one which is privileged, the relation of attorney and client must exist. But of such grave importance is it that one seeking professional aid and advice may be at liberty to freely and fully communicate to his legal adviser whatever he may regard as necessary to enable his counselor to serve him advisedly, wisely and effectually, the law recognizes the justice and wisdom of affording him protection, and declares the relation, under such circumstances, to exist. "A formal retainer is not necessary to constitute a relationship whose communications the law will treat as inviolable. It is enough, to enable the protection of the law to apply, that a legal adviser is sought for the purpose of confidential professional advice, 'with a view either to the prosecution of a claim, or a defence against a claim.'" 1 Whart. Ev. §578. And to the same effect, see Hageman on Privileged Com. §53. " It is not essential that any fee or compensation be actually paid, or even that there should be a general retainer; and although the attorney is not actually employed at the time of the conversation, yet, if the same is had in anticipation of employing him, it will come within the letter, the reason, and the spirit of the law." 19 Am. & Eng. Enc. of Law, 131. And, " The rule which excludes testimony of professional communications is broad enough to embrace a case where the one seeking counsel pays no fee, and employs other attorneys in the prosecution of the business, and even where the lawyer consulted is afterwards employed

on the other side." Weeks on Attys. at Law (2d ed), §143, p. 304. Thus in Thorp *v.* Goeway, 85 Ill. 611, it was held that " Facts and circumstances communicated to an attorney or solicitor, when he is called upon and acting as a legal adviser, are privileged," although the negotiations between the parties as to the amount of pay the attorney should receive for his services to prosecute a suit " resulted in no employment, for want of agreeing upon the fee to be paid." Again, in Orton *v.* McCord, 33 Wis. 205, a similar ruling was made, where " testimony was excluded on the ground that, being evidence of a communication made by the defendant to Mr. Mariner in his professional capacity, and whilst the defendant was advising and consulting with him as a lawyer engaged in the conduct and management of a litigation in which the defendant was pecuniarily interested, the same was privileged, and therefore inadmissible, the position taken against this ruling [being] that it was not shown that the defendant had formally retained Mr. Mariner, and hence the relation of attorney and client did not exist."

The following head-note briefly states the facts upon which this question was presented to the Court of Appeals of New York for determination : " A practicing attorney also carried on a liquor store. R., one of his clients, called on him there, and in presence of several others put a supposed case to him, and asked him, if such a case existed, would there be any liability ? The attorney gave his opinion, and asked if the case put was a certain real transaction, and R. said it was. No case was then pending. R. paid no fee, there was no general retainer, and the attorney was never engaged in the real case. The supposed case afterwards arising, the attorney testified on the trial to the interview, and that he did not consider that R. was advising with him as counsel at that time. *Held,* improper." In deliver-

ing the opinion of the court, Folger, J., says, alluding to this statement of opinion by the witness : " Though he disclaimed on the trial that he acted in a professional capacity, that was a matter for the court to determine from the facts appearing." Bacon *v.* Frisbie, 80 N. Y. 394, 36 Am. Rep. 627. And see Beltzhoover *v.* Blackstock, 3 Watts, 20 ; Foster *v.* Hall, 12 Pick. 89, and cases cited. After the elaborate discussion of the question to be found in section 143 of Weeks on Attorneys, the author of that work, in summing up, says : " We understand, therefore, that both the English and American rule now is, that all communications made by a client to his counsel for the purposes of professional advice or assistance are privileged, whether such advice relates to a suit pending, one contemplated, or to any other matter proper for such advice."

Such, so far as we are informed, has been the general understanding and uniform application of the law in this State. In *Young* v. *The State,* 65 *Ga.* 527, it was said : "The law recognizes and protects the confidential relations existing between attorney and client, and we would not abridge in the remotest manner these relations. · In this case the record shows that although the attorney was not actually employed at the time of the conversation, yet that the same was had *in anticipation of employing him,* and we think it comes fully within the letter, the reason and spirit of the law." See also *Skellie* v. *James,* 81 *Ga.* 419.

In *Brown* v. *Matthews,* 79 *Ga.* 1, it did not affirmatively appear that the`conversation admitted was a confidential communication addressed to the attorney in his professional capacity, with a view of securing his aid or advice. In commenting upon the circumstances under which the disclosure of the facts testified to by the witness were made, Chief Justice BLECKLEY said : " We agree with the court below in thinking that Hay-

good was neither employed professionally, nor consulted with a view to employment. He was 'raided,' not retained. To exclude declarations as communications to counsel, or made with a view to employment, their root in the relation, or contemplated relation, of client and attorney, must be manifest. They must be the offspring of the relation, present or prospective, not of taking, or expecting to take, the fruits of such a relation without forming it. To tax a lawyer's courtesy or liberality for advice or services is not to employ him." Other adjudications by this court involving the subject-matter in question are neither helpful in, nor pertinent to, the present discussion.

Not only, therefore, is the construction we have given to this statute unquestionably within its spirit and reason, but we think we have successfully endeavored to show by authority that it is also in exact accord with the precise letter of the act. Indeed, so well settled is the law that the relation of attorney and client under such circumstances is established, that the framers of the act may with reason be said to have used the term "client" advisedly, and with direct reference to the construction so frequently placed thereon by the courts. If this be true in fact, they possibly thought it unnecessary (if, indeed, the thought occurred to them) to expressly add that confidential communications made to legal counsel "by reason of the anticipated employment of him as attorney" should be held equally sacred and inviolable, whether such *anticipated* employment subsequently resulted in *actual* employment or not. This single and simple addition would have saved the statute from attack or possible question; but alas! these "makers of law" were but human.

Among persons disqualified to testify, the Missouri statute enumerates "an attorney, concerning any communication made to him by his *client in that relation, or*

his advice thereon, without the consent of that *client*."
In Cross *v.* Riggins, 50 Mo. 335, the direct question was
raised whether, under this statute, " one who seeks coun-
sel, but who in fact pays no fee, and employs others in
the prosecution of the business—the counsel consulted
being afterwards employed against him,—can be so con-
sidered as a *client* that his communications are privi-
leged." That court decided the question as we have
done. Citing this case with approval, and making use
of much of what is said by Judge Bliss in delivering
the opinion of the court, Weeks in his work on Attor-
neys (§143, p. 304) presents forcibly and clearly the
reasons why statutes such as ours should thus be liber-
ally construed. He says: "The term "client," as used
in a statute, should be understood in its most enlarged
sense, and the prohibition should close the mouths of
all who have listened to disclosures looking to profes-
sional aid. The rule should be universal, and apply to
all who communicate facts expecting professional advice,
or it will fail to answer its ends. Its limitations may be
unknown to laymen; and without feeling a perfect free-
dom in all cases, instead of the perfect confidence which
should exist, the intercourse might be restrained by fear
and marred by dissimulation on the part of the client,
and the object of the rule be defeated; and, besides, a
door would be opened to fraud. One might seek advice
expecting not only to pay, but to retain in an anticipated
litigation, and after his story had been heard, the re-
tainer might be declined, and the information used
against him; also, an obstacle would be thrown in the
way of the settlement of disputes. Public policy re-
quires that persons should feel that they may securely
say anything to members of the profession in seeking
aid in their difficulties, although the person whose ad-
vice they seek may have been employed, or may be
afterwards employed, against them."

We wish to be understood as ruling positively only to the extent indicated in the head-note, and upon the question as made upon the facts of the case before us. The quotations above made are used only to show the extent to which the courts have gone upon the question involved, and we do not adopt without qualification all that is said therein.

2. The verdict rendered in this case does not meet with our full sanction and approval. Had the jury found in favor of the plaintiffs in error, their verdict would, apparently, have been more consistent with the actual truth of the case. It is not, however, the province or function of this court to correct what seems to be erroneous findings by juries upon questions purely of fact. Under our system, and in view of the oft-repeated rulings of this court, we cannot set aside verdicts when they are to some extent supported by evidence, and in addition to this, are approved by the judges before whom they are rendered. These officers have far greater powers in this respect than have been conferred upon us; and in our opinion, a more liberal exercise by them of the wide discretion with which they are clothed in the matter of granting new trials, would be promotive of the ends of justice.          *Judgment affirmed.*