## 5806. BRAXLEY v. THE STATE.

1. The showing for a continuance was so incomplete that the court did not err in overruling it. Although the case was called for trial on the next day after the finding of the indictment, no reason was assigned why the defendant was not ready for trial. When it appears that by reason of the fact that the indictment has just been returned, the defendant has not had proper opportunity of making preparation for trial, a continuance should always be granted; but the mere fact that

a case is called for trial immediately after the return of an indictment does not of itself indicate that the defendant is not prepared for trial. In fact he has the right immediately to demand a trial.

2. Upon an indictment with two counts, charging the defendant with burglary and with being an accessory before the fact in the burglary, the State is not obliged, either before arraignment or after the conclusion of the evidence, to elect upon which count in the indictment a conviction will be asked.

3. The requirement that the principal shall be convicted before an accessory can be tried is complied with in a case in which three persons are alleged to be principals; if there is proof of the conviction of any one of the alleged principals; and the requirement is also complied with if a plea of guilty of one of the principals be entered at such time as to permit proof of his conviction to be submitted on the trial of the accessory. The fact that one of the principals in the present case pleaded guilty after the trial of the alleged accessory had begun afforded the latter no cause for complaint, especially since it does not appear that the defendant on trial interposed an objection to the suspension of his trial in order for the plea of the principal defendant to be received.

4. The testimony of a witness as to his statements to the defendant himself, and as to the acts of the witness in concealing the money, were admissible. The merits of the motion to exclude the entire testimony of this witness can not be considered, because the testimony referred to is not set out as a part of or as an exhibit to the ground of the motion for a new trial in which error is assigned thereon. A ground of a motion for a new trial should not require reference to the brief of the evidence to render it intelligible.

5. The record of the trial and conviction of one accused of crime is the highest evidence of the fact that he was convicted and served a period of time in the penitentiary; and the court did not err in refusing to require a witness to answer whether he had been convicted of burglary or had served a sentence in the penitentiary therefor, or whether he was pardoned from the penitentiary, since the highest and best evidence upon the subject was a matter of record. *Green* v. *State*, 125 *Ga.* 742 (6) (54 S. E. 724).

6. The bag of money, the chisel, and the satchel, as identified and connected with the crime by other testimony, were admissible as evidence.

7. Under the facts disclosed by the record, it was not an abuse of discretion to refuse to order a mistrial on the ground that counsel for the prosecution had gone outside the record in arguing the case to the jury, and had impressed the jury with his personal opinion as to the guilt of the accused.

8. There being direct evidence as to the guilt of the accused, it was not error, in the absence of an appropriate request, to omit to charge the rule as to circumstantial evidence, to the effect that to warrant a conviction on such evidence, it must exclude every other reasonable hypothesis than that of the guilt of the accused (Penal Code, § 1010).

9. A jury is not authorized to convict one of a felony on the testimony of an accomplice alone. Such testimony must be corroborated by some

independent fact or circumstance which, taken by itself, leads to the inference not only that the crime was committed, but that the defendant was implicated in its commission. This principle should have been given in charge to the jury in the present case. The charge requested upon this subject was appropriate, and the omission to give it was not cured by the instruction that the jury "would not have the right to convict the defendant on the testimony of a witness who was an accomplice, and there would have to be some other corroborating circumstances of the testimony of an accomplice, under the laws of the State of Georgia, before you would be authorized to convict on the testimony of an accomplice or accomplices." This instruction left out of consideration the essential requirement that the evidence in corroboration of the accomplice must of itself be sufficient to satisfy the jury as well that the accused was implicated in the commission of the crime as that the crime had in fact been committed.

10. In charging the jury in a criminal case, a charge that invokes any authority other than the law, even though it be "the Gospel," is inappropriate, and a request for instructions which proposed the Gospel as a criterion was properly refused.

11. In charging the jury it is error to sanction a contention not warranted by any evidence in the case. The statement of a contention which is entirely unsupported by evidence may unduly impress the jury to the prejudice of the losing party.

12. An instruction to the jury that "under the laws of the State of Georgia, the jury are the exclusive judges of all questions of fact involved in the trial of a criminal case, and the court is not allowed to express to the jury any opinion as to what has or what has not been proved in the case from the beginning to the end thereof," was not erroneous because of the omission to state in connection therewith, that the jury must take the law from the court and the testimony from the witnesses. If a more definite instruction as to the jury's power and their proper sources of information was desired, it should have been requested.

13. Where, under the provisions of section 1062 of the Penal Code, a jury has the right to recommend that one accused of a felony be punished as for a misdemeanor, it is the duty of the trial judge to inform the jury in plain and unmistakable language that such a recommendation will not be effective unless it meets with his approval. *Taylor* v. *State*, 14 *Ga. App.* 492 (81 S. E. 372), *Frazier* v. *State*, 15 *Ga. App.* 365 (83 S. E. 273). This requirement was complied with in the present case.

14. Testimony of a client as to advice given to him by his counsel is incompetent, and, on timely motion, should be excluded. Communications between attorney and client are "excluded from public policy." Civil Code, § 5785.

DECIDED SEPTEMBER 24, 1915.

Indictment for burglary; from Baldwin superior court—Judge Park. June 2, 1914.

*Melvin Meeks, Homer Oxford,* for plaintiff in error.

*Dwight L. Rogers, solicitor,* contra.

RUSSELL, C. J. The defendant was tried upon an indictment containing two counts,—one charging burglary, and the other the offense of accessory before the fact to burglary. He was convicted upon the latter count, with a recommendation that he be punished as for a misdemeanor. The court imposed a felony sentence. The defendant's motion for a new trial was overruled. Questions raised by the defendant's demurrer to the indictment and by his pleas in abatement were certified by this court to the Supreme Court, and the answers to the certified questions (143 *Ga.* 658, 85 S. E. 888) are self-explanatory.

We shall discuss only the rulings stated in the 9th, 11th, and 14th headnotes; for the remaining headnotes do not require elaboration.

The proof of the defendant's guilt, if he be guilty, depends largely upon the testimony of his accomplices and codefendants. There is also evidence in corroboration of their testimony. The court was requested to charge the jury as follows: "The testimony of an accomplice in a felony case must be corroborated by some independent fact or circumstance which, taken by itself, leads to the inference not only that the crime has been committed, but that the defendant was implicated in its commission. Therefore you are not authorized to convict the defendant upon the testimony of an accomplice alone." The request had reference to the fact that it is essential to the efficacy of the testimony of an accomplice that there be corroborating circumstances which connect the prisoner with the commission of the crime independently of the accomplice's testimony. This principle is fully discussed in *Childers* v. *State,* 52 *Ga.* 106, and this doctrine has been consistently followed by the Supreme Court and this court. The judge was not required to charge at all on the weight of the accomplice's testimony, or on the necessity for corroboration (*Baker* v. *State,* 14 *Ga. App.* 578, 81 S. E. 605); but if he did charge on the subject, it was essential not only that the attention of the jury should be called to the necessity for corroboration, but that they be instructed also that the evidence in corroboration should be of such a character as of itself to connect the accused with the commission of the crime. The judge did not instruct the jury as to this essential characteristic in testimony offered in corroboration of an accomplice. He contented himself with charging them: "If the jury

reaches the conclusion that any witness, or witnesses, that has testified in this case is an accomplice, you would not have the right to convict the defendant on the testimony of a witness who was an accomplice, and there would have to be some other corroborating circumstances of the testimony of an accomplice, under the laws of the State of Georgia, before you would be authorized to convict on the testimony of an accomplice or accomplices. As to whether or not there is any corroborating testimony in the case, or any other corroborating circumstances, is entirely a question for you to pass upon and decide by your verdict in the case." It will be noted that the judge altogether omitted to tell the jury that in order to convict upon the testimony of an accomplice, the corroborating circumstances or testimony must suffice, independently of the testimony of the accomplice, to show that the defendant was implicated in the commission of the crime.

The error of which complaint is made in the 26th ground of the amendment to the motion for a new trial was not so important in its probable consequences as was the one to which we have just referred. However, it is well settled that it is error to instruct the jury upon a theory not authorized by any evidence, or to impress them with contentions unsupported by evidence. When a judge charges a jury upon principles of law inapplicable to the case and foreign to any contention made by either party, the error may sometimes be said to be harmless, because it may be assumed that a jury of ordinary intelligence will see that the reference has no bearing upon the case at bar, and for that very reason it is not possible that the rights of either party can be prejudiced. But when an instruction which is unauthorized by the record is given, or a contention of either party which is fictitious or unsupported is given color by the judge's charge, the very fact that the instruction given would be appropriate if there were evidence to authorize it may mislead the jury into believing that there is evidence to support the contention. In the present case the accused was charged both as principal in the first degree and as accessory before the fact to the offense of burglary. Under the charge as made in the first count in the indictment, he might have been convicted as principal in the second degree, had there been any evidence to show that he was present, aiding and abetting the crime to be committed; as, for instance, by watching while the principals

committed the crime; and it was therefore error, in the absence of evidence authorizing it, to charge the jury as follows: "The State in this case claims that the said Lunceford, Knight, and Plummer were guilty of the offense of burglary as principals in the first degree, they were the actors or absolute perpetrators of the crime, and that the defendant now on trial was present aiding and abetting the act to be done." It is true that the court did not instruct the jury specifically as to the nature of the evidence or the degree of mental conviction that would be necessary to convict the defendant then on trial as principal in the second degree, but, immediately preceding the instruction of which complaint is made, the judge fully defined the meaning of the term "principal in the second degree," and, at the conclusion of the excerpt which we have just quoted, he proceeded in a similar manner to set forth the contention of the State that the defendant was guilty as an accessory before the fact, and concluded this phase of his instructions with the usual statement that the jury were the "judges of all questions of fact involved in the trial of this case." It appears that the judge, in a preceding part of his charge, used the following language: "The court will state to you, in this connection, that the State contends that the defendant is guilty of the offense of burglary as charged in the first count, as principal in the second degree, which will hereafter be explained to you." The brief of the evidence fails to disclose a single circumstance indicating that the accused was present aiding and abetting in the commission of burglary. The only proof as to where he was at the time of the burglary placed him in Macon, and this evidence was not contradicted. It is therefore plain that the court's instructions were likely to have impressed the jury with the thought that there were perhaps some circumstances in evidence, which they had overlooked, but which the judge had not forgotten, which would authorize the inference that the accused was present at the time that the crime was committed; and this impression would tend to mislead and confuse them. The reference to a contention of the State which was unsupported by the evidence, in connection with the additional importance attached to it by the correct definition of the term "principal in the second degree," was error. However, since injury must concur with error before it can be said to be so harmful as to work a reversal (and the rule is well settled that

generally one convicted only of the lower grade of an offense can not complain of errors in instructions as to the higher grades of the same offense), the fact that the defendant was not convicted as principal in the second degree renders impotent his present complaint, and we have referred to the matter only because (since we have felt constrained to order a new trial upon other grounds) the error should be avoided hereafter.

In one of the grounds of the motion for a new trial the defendant assigned error on the ruling of the court in allowing the witness Lunceford (who was charged to be one of the principals in the burglary) to answer the following question propounded by the solicitor-general: "Mr. Cooper has asked you why you finally admitted entering into this enterprise with the other people; state whether you acted on the advice of your lawyer, after going over it with him?" The witness answered: "Yes, sir." The defendant's counsel objected to this question and the answer, upon the ground that whatever passed between the witness and his counsel was a confidential communication and could not be proved in a court of justice. The trial judge overruled the objection and refused to repel the testimony. We think that the court erred in this ruling, and that the error was prejudicial to the accused. In section 5785 of the Civil Code it is declared: "There are certain admissions and communications excluded from public policy. Among these are—1. Communications between husband and wife. 2. Between attorney or counsel and client. 3. Among grand jurors. 4. Secrets of State." Section 5786 deals expressly with communications made by a client to his attorney, declaring that "Communications to any attorney, or his clerk, to be transmitted to the attorney pending his employment, or in anticipation thereof, shall never be heard by the court;" and, by the terms of this code section, "the attorney can not disclose the advice or counsel he may give to his client." The single exception to the rule stated in that section is that the attorney may, at his option, testify "to any facts which may transpire in connection with his employment." Under section 5860 (Penal Code, § 1037, par. 5) no attorney is either competent or compellable to testify as "to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relation as attorney, or by reason of the anticipated employment of him as attorney, but shall be both competent and

compellable to testify, for or against his client, as to any matter or thing, knowledge of which he may have acquired in any other manner." There is more than one section in the code in which the attorney is expressly forbidden to testify to the contents of communications with his client, but, so far as we know, there is no express provision of law by which the client is rendered incompetent to give evidence of advice communicated to him by his counsel, other than the general inhibition contained in the second clause of section 5785, which declares in broad and general terms that communications between attorney and client are excluded upon grounds of public policy. It is natural that there should be several sections dealing with the subject from the standpoint of the attorney, because he is an officer of the court, and experience no doubt demonstrated that there was a necessity for an exact definition of the scope of the public policy as related to the testimony of attorneys, in order to provide for those exceptional cases in which an attorney is by law permitted to testify, although his testimony may affect the interest of his client. It seems clear, however, especially since section 5785 has appeared without alteration in each of the successive editions of the code, and since the General Assembly has not seen proper to create as to the client any exception to the general rule announced in section 5785, that the court should have declined to hear from the client any testimony as to communications or advice imparted to him by his counsel during the relationship. In some States the client's power to testify is a matter of privilege. The code announces a different rule in this State, by declaring communications between attorney and client to be excluded upon grounds of public policy. The same rule of reason which by legislative enactment prior to the adoption of the code excluded testimony on the part of the attorney was extended upon the adoption of the code, so as to include the client also, and the rule was declared to be, not one of privilege, but one of public policy. It would be manifestly unfair to permit a client to give his version of a communication, or his statement of what purported to be the advice given him by his attorney, and yet absolutely to close the mouth of the attorney and forbid him to deny or explain testimony which might be quite damaging to his personal and professional reputation. There is perhaps an exception under which both client and attorney may testify, as in an action

brought by the client against the attorney for damages alleged to have resulted from improper advice or unskilful service. However if, upon considerations of sound public policy, the courts are not permitted to hear or countenance testimony from the attorney as to communications between himself and his client, this policy of the State would be unenforceable and would be destroyed by permitting the client to disclose that which the attorney could not, and thus the purpose in the adoption of the public policy, which was to promote the greatest possible freedom between attorney and client, would be completely nullified. An attorney would be greatly hampered in the exercise of his office, no matter how honorable the manner in which he discharged his duty, if it would be possible for the client at some future time, and perhaps to the detriment of some other client of the same attorney, to disclose facts which became known to him solely by reason of his relationship as client of the attorney in question. It is needless to multiply instances from which it would be apparent that to permit the client, even as a matter of privilege, to testify at his option to disclosures or advice which might properly be communicated to him by his attorney would tend to induce such extreme caution on the part of an attorney as would prevent the full exercise of his duty and prove detrimental in the administration of justice. However, there is no room for argument, for the State has expressly declared the public policy, and it is not to be questioned. Communications between attorney and client are, in this State, placed upon the same plane as those between husband and wife, because the lawmaking power has adjudged that the disclosure of communications between persons occupying those relations is inconsistent with the permanence of the relation. It is plain, therefore, that the testimony in this case as to the advice that may have been given Lunceford by his attorney was more than irrelevant. It was absolutely banned, and may have been harmful.

It can not be said that the admission of this testimony could in no event have been prejudicial to the accused. In order to convict Braxley, one of the essential facts which it was incumbent on the State to prove was the guilt of Lunceford as principal; and the jury may have taken the fact that Lunceford pleaded guilty upon the advice of able counsel, who had fully investigated the case, as the strongest proof of the guilt of Lunceford, the prin-

cipal. In many communities there are attorneys of such repute that a juror has more confidence in their judgment than in his own. So far as Braxley was concerned, the record of Lunceford's plea of guilty proved nothing more than that the latter had in open court openly confessed to his guilt. A confession uncorroborated is insufficient to support a conviction of crime. The circumstances submitted to the jury as corroborative of Lunceford's plea of guilty and of his testimony as an accomplice might have been insufficient for that purpose in the minds of the jury. In that event, what would have been more natural than for the jury to say, "Lunceford was forced to confess and must be guilty, because, after investigation by the attorney into all the facts, his counsel was in good conscience compelled to advise him that the proof of guilt was so manifest that a contest before a jury would be hopeless." It is well known that lawyers are never inclined to advise a client against his interest. Even if the law had not prohibited that the advice of the attorney be given in evidence, it would perhaps have been incompetent and prejudicial to the defendant, because of putting into the scales against the accused a mere opinion of the attorney upon one of the essential facts in the case, to wit, the guilt of the principal, Lunceford. The substance of the answer elicited from the witness amounted to a statement that in the opinion of his lawyer the witness was guilty of the burglary charged against him.

. The objection to the testimony was timely and well founded, and it should have been excluded. For the reasons stated in the 9th and 14th headnotes, the trial judge erred in overruling the motion for a new trial.

           *Judgment reversed. Broyles, J., not presiding.*