### 44984. SECURITY LIFE INSURANCE COMPANY et al. v. NEWSOME.

JORDAN, Presiding Judge. Appeal by the defendants in an assault and battery action from the judgment and from the denial of their motion for a new trial. The jury returned a verdict for $3,000.

1. Plaintiff was a salesman for defendant Security Life. Defendant Bell was its district manager. Plaintiff's complaint alleged that on August 31, 1967, Bell, acting within the scope of his employment, suddenly and without provocation assaulted plaintiff and struck him a severe and crushing blow on the head. Bell testified that he had discovered several fraudulent claims submitted by plaintiff and had called him into the office that morning; that plaintiff was wild and acted drunk; that there had been a row; and that he had asked plaintiff to turn in his records for audit. When plaintiff told him the "life register" was at his house, Bell decided to go after it personally. He stopped first to see one Buffington, another employee and plaintiff's immediate supervisor, who accompanied him the rest of the way. When there was no answer to his knock at the plaintiff's house, Bell went next door to the home of plaintiff's mother-in-law, Mrs. Humphries, to ask when plaintiff's wife would be expected back. Mrs. Humphries sent a young grandson inside to telephone the wife at a neighboring farm. She and Bell sat down on the front porch to wait. In a few moments plaintiff drove up and approached the porch. Testimony concerning the next few minutes is in conflict. Mrs. Humphries said that Bell rose from his chair, pushed plaintiff against the house, took his head between his hands and pounded it against the house (but did not strike plaintiff with his fist). Plaintiff said merely that Bell grabbed and hit him. Bell testified that

when plaintiff came onto the porch he had tried to attack Bell; that Bell had pinned him to the side of the house by the shoulders to restrain him; and that plaintiff had knocked his own head against the wall three times. Buffington, who had waited in the car, corroborated this version except for the question of. who banged plaintiff's head. He could not see this part of the incident from his vantage point. Plaintiff became momentarily unconscious. At the request of Mrs. Humphries, Bell and Buffington tried to assist him to a bed. Partway there, plaintiff broke away and ran back to the porch (where he attempted to hit Bell with a chair), then leapt over the railing and ran to his own house, calling out that he was going for a gun. Bell and Buffington went to their car to leave the scene. At this moment plaintiff's wife drove up and exchanged a few words with them. The defendants introduced medical and lay testimony that plaintiff was a drug addict up until a few months prior to the incident in question when he had received clinical treatment. They also produced admissions by the plaintiff tending to show a continuing addiction. The evidence of plaintiff and Mrs. Humphries is sufficient to support the verdict.

2. Three of the special grounds in the motion for a new trial deal with the refusal of the court to allow direct testimony or cross examination on certain events earlier in 1967. Defendants contend this evidence would show a pattern of violent behavior by the plaintiff while under the influence of drugs, supporting Bell's defense that plaintiff was the aggressor. While there may be a logical connection in the minds of defendants, statutory and case law clearly declare evidence of conduct in other transactions to be irrelevant. *Code Ann.* §§ 38-302 and 38-1804; *Stanley v. Hudson,* 78 Ga. App. 834 (52 SE2d 567). In the event such similar acts should fall within one of the exceptions to the general rule, it is still within the discretion of the trial court to exclude it because of remoteness in time or prejudicial effect. Green, The Georgia Law of Evidence § 68. The enumeration shows no reversible error.

3. Defendants further charge error in the refusal of the trial court to allow them to cross examine one of their own witnesses after their counsel pleaded entrapment. Defendant's

counsel asked witness whether prior to August 31, 1967, he had ever seen the plaintiff when intoxicated or abnormal by reason of consumption of alcohol or dope, to which witness gave a negative answer. This led to counsel's plea of entrapment on the basis that the witness had related to him previously that he had seen the plaintiff when he was on dope. After the colloquy, and the ruling by the court that he would not allow cross examination on the basis of entrapment, counsel for defendant continued to question the witness who then immediately testified that he had seen Mr. Newsome on a prior occasion when he thought he had been taking dope or using alcohol, going into the details of his conduct on that occasion.

It thus appears that the witness gave the same version from the stand as related previously by‌ him to defendant's counsel, thereby eliminating the basis for the previous plea of entrapment and rendering harmless the error, if any, on the ruling on the plea.

*Judgment affirmed. Pannell, Deen and Whitman, JJ., concur. Evans, J., concurs specially. Bell, C. J., Hall, P. J., Eberhardt and Quillian, JJ., dissent.*

ARGUED JANUARY 12, 1970—DECIDED JUNE 9, 1970— REHEARING DENIED JULY 6, 1970—

*Fulcher, Fulcher, Hagler, Harper & Reed, Gould B. Hagler,* for appellants.

*Sanders, Hester, Holley, Ashmore & Boozer, Thomas R. Burnside, Lamar C. Walter,* for appellee.

EVANS, Judge, concurring specially. I concur in the majority opinion and in the judgment of affirmance, but feel compelled to add additional reasons why the judgment should be affirmed. The trial judge did not err in refusing, if he refused, to allow defendant's counsel to cross examine one of his own witnesses after his counsel pleaded entrapment. The witness in question was a Baptist minister.

When the witness, a minister of the gospel was called to the stand he requested that he be privileged not to testify and stated: "And in helping these people I find that they reveal to me, and

it's necessary that they reveal to me, matters that are personal and confidential, and strictly confidential, and under the ethics of my ministry I am not allowed to even reveal to my own wife. And so I am asking the indulgence of this court to allow me this privilege to refrain from answering questions that might betray the confidence and trust of this man that I have tried to help, Mr. Morgan Newsome, unless the court deems it necessary for the fair and impartial trial of this case."

It would appear that this minister-witness thereby properly invoked the provisions of Ga. L. 1951, p. 468, (*Code Ann.* § 38-419.1) as follows: "Every communication made by any person professing religious faith, or seeking spiritual comfort, to any Protestant minister of the Gospel, or to any priest of the Roman Catholic faith, or to any priest of the Greek Orthodox Catholic faith, or to any Jewish rabbi, or to any Christian or Jewish minister, by whatever name called, shall be deemed privileged. No such minister, priest or rabbi shall disclose any communications made to him by any such person professing religious faith, or seeking spiritual guidance, or be *competent* or *compellable* to testify with reference to any such communication in any court." (Emphasis supplied.)

The above language therefore renders such testimony incompetent as well as not compellable. All of the cross examination sought of this witness fell within the range and scope of privileged communications.

Generally, certain confidential communications may be waived, but under some statutes they cannot. 97 CJS 849, 850, Witnesses, § 306. It appears that plaintiff's counsel undertook to waive any right he had to insist upon the confidential nature of the testimony. While we find no authorities on this question, we apprehend it applies equally to the witness and to the party, and it is quite clear that the witness himself did not waive it, but, on the contrary, insisted upon whatever protection the law afforded him in this respect.

In this State, under the confidential communications statutes, it appears that public policy decrees that the relationship of attorney and client (*Code* §§ 38-419 and 38-1604) and ministers and persons professing religious faith or seeking spiritual comfort (*Code*

§ 38-419.1; Ga. L. 1951, p. 468) is absolutely privileged, and the privilege cannot be waived. Neither the attorney nor the minister can be compelled to so testify as to confidential communications. As to ministers, the statute reads: "No such minister . . . shall disclose any communications . . . or be competent or compellable to testify with reference to any such communication in any court." In *Peek v. Boone,* 90 Ga. 767, 774 (17 SE 66), the Supreme Court held as to attorneys: "Public policy requires that persons should feel that they may securely say anything to members of the profession in seeking aid in their difficulties, although the person whose advice they seek may have been employed, or may be afterwards employed, against them." Once the public policy of this State has been established, it cannot be waived. *Code* § 102-106; *Bishop v. Act-O-Lane Gas Service Co.,* 91 Ga. App. 154, 165 (85 SE2d 169); *Swint v. Smith,* 219 Ga. 532 (3) (134 SE2d 595). The Supreme Court, on several occasions, has declared it to be against public policy for confidential communications between an attorney and his client to be released. See *Peek v. Boone,* 90 Ga. 767, supra; *Lewis v. State,* 91 Ga. 168 (4) (16 SE 986). Likewise, the Court of Appeals has also followed this statement of the law. *Braxley v. State,* 17 Ga. App. 196 (14) (86 SE 425). I think that from the language of the statute as to ministers and persons seeking spiritual comfort, as stated in Ga. L. 1951, p. 468, supra, such communications and anything regarding the same are absolutely privileged and excluded by public policy in order that persons may feel free and secure in seeking aid in their difficulties, and without protection to the ministers as well, such persons would fear that their secrets would be disclosed to society in general. These conversations or communications cannot be waived, as public policy will not allow it. Accordingly, this minister's testimony should not have been allowed in evidence over his specific request, and the court, under *Code* § 38-1704, should have protected him. All of the testimony obtained from him under these circumstances was void as against public policy, and this court should not reverse the lower court on matters arising out of this testimony, which should not have been considered under any circumstances.

Further, considerable doubt exists in my mind as to whether proper grounds of entrapment were laid by defendants' counsel.

He did not offer any testimony or evidence to show entrapment, nor did he "state in his place" as an attorney and officer of the court that he had been entrapped. It appears that in pleading entrapment he simply claimed the right to cross examine the minister, and thereafter did cross examine said witness thoroughly respecting the subject of disagreement between counsel' and the witness. The remedy afforded where there has been entrapment is to allow counsel to interrogate the witness as to such former contradictory statements, which right was fully accorded in this case. "Where a witness who had been introduced by one of the parties to the case gave testimony, on the direct examination, in a material matter which was in conflict with statements within the knowledge of the examining attorney who had introduced the witness, which the witness had made on former occasions, once in a statement to the examining attorney, and at another time in testimony on a former trial at which the attorney was present, and where it appeared from the statement of the examining attorney that the attorney had been entrapped by the former statements of the witness, it was proper for the court to permit the attorney, for the purpose of impeaching the witness, to interrogate the witness with reference to the former statements and to prove those statements." *Piedmont Operating Co. v. Cummings,* 40 Ga. App. 397 (6) (149 SE 814).

For the reasons stated above, I would affirm the trial court.

HALL, Presiding Judge, dissenting. I dissent from Division 3 of the majority opinion. Defendants charged error in the refusal of the trial court to allow them to cross examine one of their own witnesses after their counsel pleaded entrapment. The trial court based its ruling on the fact that counsel had no written evidence of the prior inconsistent statements he said the witness had made to him and upon which he relied in calling him. *Code Ann.* § 38-1801 provides that a party may impeach a witness voluntarily called by him where he can show the court he has been entrapped by a previous contradictory statement the witness made. To show entrapment, counsel must show that he was both surprised and deceived. *Kitchens v. Hall,* 116 Ga. App. 41 (2) (156 SE2d 920). I can find no authority, however, that requires this to be written proof. Counsel here stated to the court that the witness,

in two separate interviews (the last one only the preceding day), had related facts to him that were in contradiction to the testimony he had just given. I believe that is a sufficient showing of surprise and deception. To hold otherwise would make the formal deposition, a costly and time consuming procedure, a requirement of all litigation. Plaintiff's contention that there could have been no surprise since the witness had previously stated his great reluctance to testify is unsound. Most witnesses are to some extent reluctant to testify, but lawyers are entitled to expect that once in court they will relate a version of the facts at least similar to that which they first related to the party's lawyer and which was the basis for their being called to testify.

The majority opinion holds that the above error was rendered harmless for the reason that eventually the witness gave the same version on the witness stand as related previously by him to defendant's counsel. The transcript does not support this contention. Defendants' counsel had asked this witness if he had "ever observed Mr. Newsome when in your opinion he was intoxicated or abnormal by virtue of having consumed alcohol or dope?" The witness answered "No, sir. He always conducted himself in a very gentlemanly manner." Defendants' counsel then told the court that the basis of his plea of entrapment was that the witness had recently related to him that he had seen plaintiff when he was on dope and that *on the evening of August 31, 1967* (day of the alleged assault and battery) he appeared to be in the same condition and was more violent than on previous occasions. After the plea was disallowed, counsel for defendants asked the witness if he had ever had any reason to suspect that plaintiff habitually drank or took dope. After hedging a bit, the witness said, *only one time, in the spring of 1967*. Defendants' counsel then asked a series of questions to elicit a description of plaintiff's actions and appearance on that one occasion in the spring the witness mentioned. Counsel then asked the witness to state whether plaintiff's actions on the evening of August 31 were similar to those described. The witness said they were different and elaborated upon this. Counsel also asked the witness how plaintiff's speech was on August 31, and the witness gave a description indicating a difference from that of the previous occasion in the spring. The whole tenor of the

witness's testimony was that on *August 31,* plaintiff was experiencing nothing but emotional upset. This is not the testimony defendants' counsel claims he expected.

I believe the questioning by defendants' counsel was not that of a cross examination. The questions asked for descriptions and comparisons in the witness's own words. More important, the examination was not impeaching. With a favorable ruling on the plea of entrapment, counsel would have been entitled to ask the witness, specifically and forcefully, whether or not he had made the prior inconsistent statements to counsel concerning plaintiff's behavior on August 31, and if so, to explain the inconsistency.

As to any contention concerning the fact that the witness was the plaintiff's minister, it is elementary that a visual observation by a minister of a parishioner's appearance or actions does not amount to a "privileged communication" by the parishioner under *Code Ann.* § 38-419.1.

In my opinion, the trial court erred in refusing defendants the right to cross examine this witness.

I am authorized to state that Chief Judge Bell and Judges Eberhardt and Quillian concur in this dissent.