35291. BISHOP *et al.* v. ACT-O-LANE GAS SERVICE COMPANY.

Decided December 2, 1954.

*Shaw & Shaw,* for plaintiffs in error.
*Fariss & Fariss,* contra.

GARDNER, P. J. In considering the questions presented to this court for decision, it must be kept in mind that the General Assembly, following the unfortunate and disastrous Winecoff Hotel fire set about enacting legislation for the protection of the public against fires destructive to life and property. The first of these acts will be found in Ga. Laws 1949, p. 1057. The caption of that act is as follows: "An Act to enact a law having for its purpose the prevention of the destruction of life and property by fire, explosion or related hazards; to create, for such purpose, the office of Georgia Safety Fire Commissioner, and to designate the Insurance Commissioner, as such officer, vesting him with the power and duty to enforce this law; to provide for a Board of Appeals to advise with the Commissioner; to provide for the appointment of a State Fire Marshal, Deputy Fire Marshal, State Fire Inspectors, local fire marshals and to prescribe their duties; to provide for the payment of salaries and the other expenses of said office in carrying out this law; to provide for the inspection of buildings, their facilities and appurtenances for ascertaining the existence of fire hazards, causing their correction and ascertaining compliance with required safety standards for the prevention of fires and explosions; to authorize the Commissioner to promulgate rules and regulations for the prevention of fires; to promulgate rules and regulations governing certain fire hazards in hotels, apartment houses, warehouses, storage places, department stores and places of public assembly, and for the enforcement of this law; to provide for the investigation by the Commissioner and his officers of the causes of fires and the arrest of persons criminally responsible therefor; to provide penalties for violating the provisions of this law; to provide other methods for carrying out the purposes of this law; to repeal an Act approved March 28, 1947 (Georgia Laws 1947, pp. 1452 et seq.) styled the Georgia Building Safety Law; to repeal certain sections of the Code of 1933 to wit: 56-111, 56-112, 56-113, 56-114 (excepting that part relating to a tax on fire insurance premiums) and 52-205, which are superseded by this Act, and all other laws in conflict herewith; and for other purposes."

This act provided for the office of "Georgia Safety Fire Commissioner" and that "The Insurance Commissioner, ex officio,

shall be the Georgia Safety Fire Commissioner." This act provided that the said Commissioner shall appoint a State Fire Marshal. There are many provisions in that act to carry out the purposes thereof, which we will not now set forth, except we would like to call particular attention to section 30, p. 1068 of the act, which reads in part as follows: "It is declared that this Act is necessary for the public safety, health, peace, and welfare, is remedial in nature, and shall be construed liberally."

The act above referred to was approved February 25, 1949. There was another act approved on the same date known as the "Liquefied Petroleum Safety Act," the caption of which (Ga. Laws 1949, p. 1128) reads: "An Act to prescribe uniform regulations for the distribution, sale, and use of liquefied petroleum gases; to designate the Insurance Commissioner as the enforcing officer; to prescribe his duties; to empower and authorize the Insurance Commissioner to adopt, promulgate, and enforce rules and regulations; to provide for licenses and permits; to appropriate funds for the purpose of carrying out this Act; to provide for penalties; to repeal conflicting laws; and for other purposes."

To give effect to the acts of the General Assembly, the two acts should be construed together, as both sought to remedy the evil which then existed, and the acts prescribed a remedy for the public good. The General Assembly defines liquefied petroleum gas to mean and include "any material which is composed predominately of any of the following hydrocarbons, or mixtures of the same; propane, propylene, butanes (normal butane or isobutane) and butylenes." The Liquefied Petroleum Safety Act provided that the Insurance Commissioner, ex officio, shall be designated as the officer charged with the duty and authority of enforcing the act. Section IV of the Liquefied Petroleum Act provides: "The Commissioner shall make, promulgate, adopt and enforce rules and regulations setting forth minimum general standards covering the design, construction, location, installation and operation of equipment for storing, handling, transporting by tank truck, tank trailer, and utilizing liquefied petroleum gases and specifying the odorization of said gases and the degree thereof. Said rules and regulations shall be such as are reasonably necessary for the protection of the health, welfare, and safety of the public and persons *using such materials,*

and shall be based upon reasonable substantial conformity with the generally accepted standards of safety concerning the same subject matter. [Italics ours.] The said Commissioner is hereby authorized and empowered as a prerequisite to a license or permit to require the applicant for such license or permit to furnish insurance, surety bond or a personal bond with security in such amounts and terms as the said Commissioner may deem advisable and expedient for the protection of the general public and to indemnify for losses and damages which approximately result from any act of negligence of the principal, his agents or employees while he or they may be engaged in the performance of duties with reference to the liquefied petroleum business; also to adopt and enforce reasonable rules and regulations governing such insurance and bonds. Such regulations shall be adopted by the Commissioner only after such a public hearing thereon.

"The Commissioner shall promulgate rules and regulations based upon reasonable substantial conformity with the published standards of the National Board of Fire Underwriters for the design, installation and construction of containers and pertinent equipment for the storage and handling of liquefied petroleum gases as recommended by the National Fire Protection Association shall be deemed to be in substantial conformity with the generally accepted standards of safety concerning the subject matter."

Section VIII of the act reads: "It shall be unlawful for any person, firm, association or corporation, on and after the effective date of this Act, to violate any of the provisions hereof or of the rules and regulations of the Commissioner made pursuant hereto."

Section IX reads: "No municipality or other political subdivision of this State shall adopt or enforce any ordinance, rule or regulation in conflict with the provisions of this Act, or with the rules and regulations adopted and promulgated by the Commissioner under the terms and authority of this Act."

Section X reads: "The General Assembly of Georgia hereby finds, determines and declares that this Act is necessary for the immediate preservation of the public peace, health and safety."

The gist of the defendant's contention is that the court correctly sustained the general demurrer to the petition and dismissed it because the release from the contract which the

defendant procured from the plaintiff relieved the defendant of any resulting damage caused by the negligence of the defendant in installing the equipment and servicing the premises with butane gas. We cannot agree with the defendant gas distributor. The whole scheme and purpose of the two acts of the General Assembly to which reference has been made hereinbefore was to protect the public, and the General Assembly made all the provisions of the two acts a matter of public policy. Here we have a situation where the defendant makes application to the Fire Commissioner for a license to distribute butane gas, and receives a license to do so from the Fire Commissioner on the condition that the defendant would comply with the rules and regulations of the Fire Commissioner and would comply with the act of the General Assembly, and, on the other hand, obtains a release from a member of the general public, to the effect that the defendant would not have to comply with such rules and regulations. If this defendant can do this with reference to the distribution of such a dangerous instrumentality as butane gas and other like gases, why can not this defendant or someone else rent or purchase a hotel, inn, or a boarding house, and when a guest registers, have such person sign and waive any claim for damages caused by the negligence of such owner or renter of a hotel, inn, or boarding house, and then, when called to account for violating the law of the State and rules and regulations of the Fire Commissioner, rely on the theory and ground that an unsuspecting layman and member of the public can, by a release or contract, nullify the laws of Georgia and the rules and regulations of the Fire Commissioner? Such an attitude, according to our way of thinking, is untenable.

In *Bray* v. *Atlanta Gas Light Co.*, 46 *Ga. App.* 629 (168 S. E. 96), the Court of Appeals said: "Inflammable gas, when coming in contact with fire . . . is a highly dangerous substance, and a duty rests upon one having it under control to exercise due care to prevent its escape where it might become ignited and explode and cause injury and damage. *Chisholm* v. *Atlanta Gas-Light Co.*, 57 *Ga.* 29; 28 C. J. 589, 591; *Christo* v. *Macon Gas Co.*, 18 *Ga. App.* 454 (89 S. E. 532); *Mayor &c. of Unadilla* v. *Felder*, 145 *Ga.* 440 (89 S. E. 423)." *Harvey* v. *Zell*, 87 *Ga. App.* 280 (73 S. E. 2d 605) held: "The petitions stated a

cause of action for the alleged negligence of the defendant, as a distributor of butane gas, in filling a gas tank beyond the capacity fixed by the rules and regulations of the State Fire Marshal, and in filling the tank at all when it was in an unsafe condition—namely, within less than ten feet of the residence, contrary to the rules and regulations of the Fire Marshal—and the trial court erred in sustaining the general demurrers to the petitions."

Code § 102-106 provides: "Laws made for the preservation of public order or good morals cannot be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or affect the public interest."

Our attention is called to Code § 20-704 (5), as follows: "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." Under our construction, this section as applied to the facts of the instant case has no such application as is invoked by the defendant.

Our attention is called also in this connection to *Mutual Life Ins. Co.* v. *Durden,* 9 *Ga. App.* 797 (2, 3) (72 S. E. 295) as follows: "2. A person may lawfully waive the *benefit of a statutory provision,* where the rights of third persons are not involved, unless such waiver violates *public policy.* 3. The only authentic and admissible evidence of public policy of a State, is its constitution, laws, and judicial decisions. Courts should guard with jealous care the rights of private contracts, and give to them full effect when possible so to do. The provisions of the Civil Code (1910) Sec. 4253 et seq. should not be enlarged without convincing and conclusive reasons." (Italics ours.)

The following cases do not aid the defendant, under the facts of the instant case: *Zachry* v. *Industrial Loan &c. Co.,* 182 *Ga.* 738, 748 (186 S. E. 832) ; *Guptill* v. *Macon Stone Supply Co.,* 140 *Ga.* 696 (79 S. E. 854, Ann. Cas. 1915A, 1249) ; *Barfield* v. *City of Atlanta,* 53 *Ga. App.* 861, 868 (187 S. E. 407) ; *Russell* v. *Smith,* 77 *Ga. App.* 70 (47 S. E. 2d 772) ; *Southern Ry. Co.* v. *Turner,* 75 *Ga. App.* 219 (42 S. E. 2d 790) ; *Holden* v. *Royal Mfg. Co.,* 79 *Ga. App.* 767, 770 (54 S. E. 2d 317).

Regarding the principle of public policy, we call attention to

the many decisions which will be found in Ga. Digest, sections 101 (2), 123 (1), 138 (2), and 342. We are quite sure that, where counsel for the defendant and the court went wrong is in overlooking the fact that the acts of the General Assembly in question prohibited liquefied-gas distributors from doing certain things. These acts do not confer any benefit or privilege or right on any member of the public which could be waived. The provisions of the Liquefied Petroleum Safety Act (Ga. L. 1949, p. 1057) were for the purpose, as stated in section 10 of the act, of preserving public peace, health, and safety, and the regulation of explosive substances covered under the act would have such effect. Accordingly, it would be contrary to public policy to allow the provisions of the act to be abrogated by agreement. Section 4 provides that the Insurance Commissioner, as ex officio Georgia Safety Fire Commissioner, shall adopt rules and regulations "for the health, welfare, and safety of the public and persons using such materials" regarding the construction, location, installation, and operation of equipment here involved. The petition alleges that the fire which injured the plaintiff's property directly and proximately resulted from negligence on the part of the defendant in violating two of the rules and regulations of the Commissioner, promulgated under authority of the act, as follows: (a) in filling the tank in excess of 52% of its total water capacity, and (b) in locating the tank within 10 feet of a residence. Violations of valid rules and regulations of the Commissioner would constitute negligence per se (*Maner* v. *Dykes,* 55 *Ga. App.* 436, 190 S. E. 189), whether alleged as negligence per se or merely as negligence (*Whitley Construction Co.* v. *Price,* 89 *Ga. App.* 352 (1b), 79 S. E. 2d 416), and although a violation of such regulations could not be made the basis of criminal prosecution (*Glustrom* v. *State,* 206 *Ga.* 734, 58 S. E. 2d 534; *Long* v. *State,* 202 *Ga.* 235, 42 S. E. 2d 729).

Where, as here, the defendant made the installation on the plaintiff's property, it would be contrary to the regulations, and accordingly contrary to law, for the parties to agree that it be made in violation thereof. Such agreement would be against public policy and therefore void. The exception in Code § 102-106, that "a person may waive or renounce what the law has established in his favor, when he does not thereby injure others or

affect the public interest," has no application to such a situation. Since that construction should be placed upon a contract which will uphold rather than avoid it, it follows that the clause in the contract between the plaintiff and the defendant, that "the company will not be responsible for damage or loss caused directly or indirectly by escaping gas," should not be construed to include escaping gas which results from the violation by the defendant of the rules imposed upon it under authority of law for the protection of the public safety and welfare, because, if it were so construed, it would be void as in contravention of public policy. If, on the other hand, it was not the intention of the parties to protect the defendant from violations of the rules promulgated under the act, then the contract terms would not defeat an action based upon negligence and injury proximately resulting from such violations.

The petition sets forth a question of fact for the jury to determine. The court erred in dismissing the petition on demurrer.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*