48464. COLLETT v. THE STATE.

ARGUED SEPTEMBER 4, 1973 — DECIDED MARCH 14, 1974 — REHEARING DENIED MARCH 29, 1974 —

*Al Horn,* for appellant.

*George W. Darden, District Attorney, Ralph Kearns,* for appellee.

STOLZ, Judge.

The jury returned a verdict of guilty for violation of the Georgia Drug Abuse Act against the defendant, Vannette Collett. The judge sentenced defendant to 12 months in a public works camp and added the following: "Suspended provided defendant moves within 7 days from this date outside of the following counties and not to return within these counties without court permission during the next 12 months: Fulton, DeKalb, Cobb, Clayton, Gwinnette [sic], Douglas and Paulding Counties and does not use any of the public streets or highways of said counties." This sentence was dated July 18, 1972.

A warrant designated "warrant for arrest of probationer" was issued and filed in the office of the Clerk of Cobb County Superior Court on May 1, 1973. The grounds for violation of probation were stated in said warrant as follows: "Subject has been living in Cobb County, at 1007 Gresham Road; subject was at the Cobb

County Jail on March 23, 1973, and was seen traveling on Interstate 75 in Cobb County on March 25, 1973." It was signed as presented by Assistant District Attorney, Cobb Judicial Circuit.

The proceeding to revoke was brought before the court on May 8, 1973. The defendant, through her attorney, filed a written motion to dismiss "the petition for revokation [sic] of probation on the ground that the sentence herein is illegal and void constituting a sentence of banishment." The judge overruled the motion and certified his order for review. Hence, this appeal.

1. The first issue to be resolved in this appeal is whether the trial judge has authority to impose a suspended sentence in a criminal case. Several of the members of this court hold that no such authority exists except as incidental to a review of the judgment. This position is supported by older cases from this court and the Supreme Court. The most recent of these cases, (*Clarke v. Carlan,* 196 Ga. 130 (26 SE2d 362)), is a 1943 case which predates the enactment of Code Ann. §§ 27-2709 and 27-2714, both of which have their origins in Ga. L. 1956, p. 27 et seq. The statute has since been amended so as to bring the law to the form presented in the two aforesaid sections of our annotated Code. Code Ann. § 27-2709 provides in part: "If it appears to court upon a hearing of the matter that the defendant is not likely to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law, the court in its discretion shall impose sentence upon such defendant *but may stay and suspend the execution of such sentence or any portion thereof,* and may place him upon probation under the supervision and control of the circuit probation supervisor for the duration of such probation." (Emphasis supplied.)

Code Ann. § 27-2714 provides: "In all criminal cases in which the defendant shall be found guilty, or in which a plea of guilty or plea of nolo contendere shall be entered, and the trial judge after imposing sentence shall further provide that the execution of such sentence *shall be suspended,* such provision shall not have the effect of placing such defendant on probation as provided in this

law [§§ 27-2702 through 27-2726.1]." (Emphasis supplied.)

The two sections of our Code, when construed in pari materia, clearly authorize a trial judge to enter a suspended sentence when the statutory conditions exist justifying it. This court has stated: "'While it is agreed that a suspended sentence does not have the effect of placing the defendant on probation [Code Ann. § 27-2714], we see no distinction between a condition imposed for a suspension and one imposed for probation,' so that a condition which would be authorized in the case of a probated sentence would be authorized in the case of a suspended sentence." *Falkenhainer v. State,* 122 Ga. App. 478, 480 (177 SE2d 380) and cit. (1970).

In *Rowland v. State,* 120 Ga. App. 248 (170 SE2d 58), the defendant pleaded guilty to six counts of uttering forged instruments, for which he received a suspended sentence of confinement for three years to follow another sentence previously imposed, subject to certain conditions. The defendant violated one of the conditions of his suspended sentence and was brought before the court for a revocation hearing. This court affirmed the trial court's revocation and, in answer to defendant's challenge of the regularity of the sentence, held (on p. 249) that, "On the face of the record the sentence as originally imposed reveals no irregularity. It expressly shows that *it is suspended,* which, under present law, does not place the offender under the requirements of the probation law." (Emphasis supplied.) See also *Todd v. State,* 107 Ga. App. 771 (131 SE2d 201), which involves a suspended sentence.

Likewise, in *Cross v. State,* 128 Ga. App. 774, 775 (197 SE2d 853) speaking in reference to a suspended sentence this court noted, "we are satisfied that the [trial] court may provide rules and regulations in connection therewith and may, on violation of such rules and after notice and opportunity to be heard, during the time such sentence runs in accordance with its own terms, revoke the suspension and require that the remainder be served within a penal institution."

Here, the suspended sentence in this case is in complete harmony with the jury verdict, which, after finding the defendant guilty of possessing marijuana,

provided: "also unanimous decision with [recommendation] of lieniency [sic] we the jury recommend a *two thousand dollar fine* and *no* years in prison with a recommendation that this be treated as a misdameaner [sic] with probation." (Emphasis original.)

The decisions of this court in *Falkenhainer, Rowland, Todd,* and *Cross,* supra, specifically involved suspended sentences. We hold that a trial judge has authority to enter a suspended sentence in proper cases.

2. The defendant's motion to dismiss the petition for revocation contends "that the sentence herein is illegal and void, constituting a sentence of banishment." The sentence imposed by the trial judge has been fully set forth earlier in this opinion. The verbiage of the sentence can leave little doubt that it was the intention of the jury that the defendant receive only misdemeanor punishment. The sentence imposed (12 months suspended on condition) shows that the trial judge approved the recommendation of the jury and reduced the felony to a misdemeanor, as provided in Code § 27-2501, and was a legal sentence.

The defendant, however, contends that the conditions imposed on the suspended sentence (i.e., move out of the county within 7 days; stay out of the seven named counties during the term of the suspended sentence and not to use the public streets and highways of said counties) amount to a sentence of banishment and is unconstitutional. Art. I, Sec. I, Par. VII of the Constitution of the State of Georgia of 1945 (Code Ann. § 2-107), which provides: "Neither banishment beyond the limits of the State, nor whipping, as a punishment for crime, shall be allowed." We can find no Georgia cases interpreting this paragraph of our Constitution. Code Ann. § 27-2711 (Ga. L. 1956, pp. 27, 32; 1958, pp. 15, 23; 1965, pp. 413, 416) sets forth the *conditions of probation* and gives the court the authority to determine the terms and conditions thereof. Here we are not concerned with a *probated sentence,* but one which has been *suspended* on certain conditions. As previously noted, Code Ann. § 27-2714 specifically provides that suspended sentences *shall not have the effect* of placing the defendant on probation. The only real distinction between a probated

sentence and a suspended sentence is that a probated sentence is served under the supervision of the probation officers pursuant to the "Statewide Probation Act," Code Ann. §§ 27-2702 through 27-2726.1 (Ga. L. 1956, p. 27 et seq., as amended), whereas a suspended sentence is served without such supervision, but on such legal terms and conditions as are required by the sentencing judge. "Banishment. In criminal law. A punishment inflicted upon criminals, by compelling them to quit a city, place, or country for a specified period of time, or for life." Black's Law Dict. (Rev. 4th Ed.), p. 183. See also 8 CJS 593, Banishment.

It is argued that our Constitution is clear and that banishment occurs only when a person is expelled beyond the borders of the state. We have no Georgia cases on this point holding either view. The general rule is that banishment, while unusual, is not cruel, and does not constitute a violation of the prohibition against cruel and unusual punishments. 24B CJS 554, Criminal Law, § 1978 (2). It is impliedly prohibited by public policy, 21 AmJur2d 559, Criminal Law, § 609, in the absence of statutory authorization. 24B CJS 611, Criminal Law, § 1991.

In People v. Blakeman, 170 Cal. App. 2d 596 (339 P2d 202), the defendant pleaded guilty to the offense of assault and battery and proposed that he would leave the community. It was adjudged that he pay a fine of $500 and be imprisoned one year in the county jail, providing that the imposing of the jail sentence be suspended upon condition that he absent himself from the county. Ten months later, after a hearing, the trial court found that the defendant had violated said condition, and, for that reason, revoked probation by terminating the suspension of sentence. The California court held: "[1, 2] It was beyond the power of the court to impose banishment as a condition of probation. *The provision therefor was a void and separable part of the order granting probation. Revocation of probation upon the sole ground of violation of such a void provision was without authority in law and should be reversed.* (Emphasis supplied.)

"In In re Scarborough, 76 Cal. App. 2d 648 (173 P2d 825), an order suspending sentence on condition of

banishment for two years was deemed the granting of probation upon a void condition. It was void because there was no statutory authority for it and banishment is proscribed by the fundamental policy of not permitting one political division to dump undesirable persons upon another. Said the court: 'The same principle which prohibits the banishment of a criminal from a state or from the United States applies with equal force to a county or city. The old Roman custom of ostracizing a citizen has not been adopted in the United States. The so-called "floating sentence," too frequently resorted to in some inferior courts, falls in the same category. There is no statute in California authorizing such judgments.' 76 Cal. App. 2d at page 650, 173 P2d at page 827. See also the authorities cited on page 649 of 76 Cal. App. 2d, on page 826 of 173 P2d, and 15 AmJur 112, Crim. Law, § 453. This void condition was deemed separable from other provisions of the order. Accordingly, defendant was entitled to his freedom upon probation until revocation of probation for lawful reasons.

"Counsel for plaintiff contends that the policy against banishment is not as sweeping and unqualified as expressed by the court in the Scarborough case. He says that in the case now before us another public policy, that of rehabilitating the defendant by removing him for a time from the temptations to which he was subjected in his old habitat, comes into play and modifies or qualifies the policy against banishment. We find in the reasoning which supports the latter policy and the decisions expounding it no basis for any such qualifying or modifying factors. The question whether the Legislature could modify this policy is not before us, for it has not undertaken to do so.

"[3] Plaintiff further contends that defendant waived the right to urge the invalidity of the banishment clause by suggesting banishment and receiving the benefit of the probation which was conditioned upon banishment. The fallacy of this argument is that we are not dealing with a right or privilege conferred by law upon the litigant for his sole personal benefit. We are concerned with a principle of fundamental public policy. The law can not suffer the state's interest and concern

in the observance and enforcement of this policy to be thwarted through the guise of waiver of a personal right by an individual. 'Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' Civil Code, § 3513. 'Although a defendant may waive rights which exist for his own benefit, he may not waive those which belong to the public generally.' " See also 14 AmJur 917, Crim. Law, § 214; 7 Cal. Jur. 897, Crim. Law, § 45; Bird v. State, 231 Md. 432 (190 A2d 804); People v. Wallace, 124 N. Y. S. 2d 201.

There is an express constitutional prohibition against a sentence of banishment *beyond* the limits of the state, hence the General Assembly would be powerless to enact laws authorizing such. Although the General Assembly would have the authority to authorize the imposition of a sentence, or a condition affixed to a suspended/probated sentence, which banishes a person from certain areas *within* the state, it has not done so.

The logic, reason and results reached by the California courts in Blakeman and Scarborough, supra, are sound. To hold otherwise would be to impliedly authorize every judicial officer exercising even the most minimal incarceration powers, to dump its undesirables on its neighbors. Such directly contravenes the public policy of this state.

To the argument that this court has no authority to express the public policy of this state on this point we but make the following passing observation. The issue has been squarely presented to us. There are no judicial precedents of statute. We hold that as a matter of a public policy banishment within the state is not otherwise. If the views expressed in the second dissent were the majority, would not our public policy be stated as to authorize banishment within the state?

The sentence imposed by the trial judge was legal and valid. The judge likewise acted within his authority in suspending the sentence, but, in imposing the stated conditions on the suspension, exceeded his powers.

The defendant's motion to dismiss should have been sustained insofar as it applied to the conditions imposed on the suspended sentence.

*Judgment reversed. Bell, C. J., Hall, P. J., Deen and Clark, JJ., concur. Eberhardt, P. J., Pannell, Quillian and Evans, JJ., dissent.*

PANNELL, Judge, dissenting.

I agree with the statement of facts as set out in the majority opinion, but I disagree with the opinion and the holding therein.

The opinion holds that a suspended sentence is served without supervision, but on such legal terms and conditions as are required by the sentencing judge; that a probated sentence is served under supervision of the probation officers pursuant to the "Statewide Probation Act." The error in this is that a suspended sentence is *not served at all but is suspended.* A probation sentence is served and the time runs from the time he enters the service of his sentence.

a.  The Constitution of the State of Georgia (Const. 1945, Art. V, Sec. 1, Par. XI [Code Ann. § 2-3011]) places the "power to grant reprieves, pardons and paroles, to commute penalties, remove disabilities imposed by law, and may remit any part of a sentence for any offense against the State, after conviction, except in cases of treason or impeachment," etc. (With provisions to report same to legislature) in the Board of Pardons and Paroles, which is a constitutional board within the executive department. This section is further repeated as Section 27-2701 of Georgia Code Ann.

There is no provision in the Constitution authorizing the courts of the state, having jurisdiction in criminal cases, to exercise any of these powers; and the Constitution declares that "the legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided." Art. I, Sec. I, Par. XXIII, Constitution of Georgia, 1945 (Code Ann. § 2-123).

Also, there is no provision whatever in the laws of this state for setting at liberty a convicted criminal and hanging over his head a threatened sentence, or the

threatened enforcement of an imposed sentence, for the purpose of constraining him to refrain from further violations of the criminal statutes of the state.

Clemency is for the executive department. To give the courts the power to try, sentence and grant clemency would, in my opinion, completely ignore the separation of powers in our Constitution, and destroy our system of checks and balances.

Georgia Laws 1956, pp. 27, 31; 1958, pp. 15, 20; 1960, p. 1148; 1972, pp. 604, 609 (Code Ann. § 27-2709) provides for the hearing by court to determine whether or not he shall be placed upon probation. "If it appears to the court upon a hearing of the matter that the defendant is not likely to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law, the court in its discretion shall impose sentence upon such defendant but may *stay and suspend the execution of such sentence or any portion thereof, and may place him upon probation under the supervision and control of the circuit probation supervisor for the duration of such probation.*" Thus, the court is given the right to stay or suspend execution for a specific purpose, namely, to determine if defendant should be placed on probation or should serve sentence under confinement. This is in similar category to review of judgment by appeal when stay is given for that purpose.

b. The state contends that under the Probation Act, Ga. L. 1956, pp. 27, 32, and amendments thereto, and particularly as shown by Ga. L. 1965, pp. 413, 416, Section 3 (Code Ann. § 27-2711), the judge could impose conditions (2) to avoid persons or places of disreputable or harmful character; (6) remain within a specified location, and that this sentence comes under those provisions. This contention would be sound if the judge had placed the defendant on probation under proper conditions. But, here, the defendant was not put on probation. Sentence was given and then suspended upon conditions stated.

c. This is a suspended sentence and does not have the effect of placing such defendant on probation. Ga. L. 1965, pp. 413, 416, Section 4 (Code Ann. § 27-2714) reads as follows: "In all criminal cases in which the

defendant shall be found guilty, or in which a plea of guilty or plea of nolo contendere shall be entered, and the trial judge, after imposing sentence, shall further provide that the execution of such sentence shall be suspended, such provision *shall not* have the effect of placing such defendant on probation as provided in this law [§§ 27-2702 through 27-2726.1]." Ga. L. 1933, p. 266 was the original Act that placed suspended sentences under probation; and it continued until repealed by the above 1965 Act. To hold that suspended sentence still has the effect of placing defendant under probation would nullify the 1965 Act and make it meaningless; and would, in the writer's opinion, cause the court to usurp the power of the legislature. Also, for a discussion of former law, see Judge Whitman's special concurrence in *O'Quinn v. State;* 121 Ga. App. 231 (173 SE2d 409). We do not, therefore, make any holding on what a court can do under the provisions of probation but confine ourselves solely to suspended sentences.

A judge has no authority to suspend execution of a sentence imposed in a criminal case, except as incidental to a review of the judgment. *Neal v. State,* 104 Ga. 509 (30 SE 858, 42 LRA 190, 69 ASR 175); *Wall v. Jones,* 135 Ga. 425 (69 SE 548); *Smith v. Jackson,* 164 Ga. 188 (138 SE 52); *Clarke v. Carlan,* 196 Ga. 130 (26 SE2d 362). Of special note, the case of *Avery v. State,* 22 Ga. App. 746 (97 SE 204) is a case very similar in facts to the present case.

So much of the sentence as imposed services of 12 months in public works camp is legal and enforceable, but that part which related to the suspension of the penalty of serving a term of 12 months in the public works camp was illegal, null and void.

The judge did not err in overruling the motion to dismiss. He has the right to require him to serve the sentence.

I would affirm the trial judge.

I am authorized to state that Presiding Judge Eberhardt and Judge Quillian concur in this dissent.

EVANS, Judge, dissenting.

The trial judge sentenced the defendant to twelve

months imprisonment and suspended same conditioned upon defendant's moving outside six named counties and not returning, and not using the public streets or highways of said six counties, without the court's permission during the next 12 months. The state moved to revoke the suspended sentence because of alleged violation of its terms; and defendant moved to dismiss the petition to revoke, "on the ground that the sentence herein is illegal and void constituting a sentence of banishment."

Both the majority and dissenting opinions heretofore filed discuss the legality of suspended sentences, etc., and cite many authorities. To me, this does not seem to be the question involved, but rather the question is whether defendant's attack upon the motion to revoke is sustainable, that is, was "the sentence herein . . . illegal and void *constituting a sentence of banishment*"? (Emphasis supplied.) Defendant's appeal therefore is, and must be, limited to the question of whether the original sentence was *a sentence of banishment* and therefore illegal.

The only prohibition against banishment as punishment for crime is found, not in statute law, but in constitutional law, to wit, Code Ann. § 2-107 (Const. of 1945). Defendant made no attack in the lower court on the sentence as violating his constitutional rights. It has been held times without number that a constitutional attack will not be considered by the appellate courts unless the attack was made in the lower court, and cannot be raised for the first time on appeal. *Marter v. State,* 224 Ga. 569 (2) (163 SE2d 702); *Roberts v. Roberts,* 226 Ga. 203 (6) (173 SE2d 675).

Both the majority opinion and previously filed dissenting opinion discuss theories and defenses which were not advanced by defendant in the lower court, and were not relied on or insisted upon by him in said lower court. This we are not allowed to do. The Supreme Court of Georgia plainly held in *Clark v. Baker,* 186 Ga. 65, 69 (196 SE 750), "We ought not and will not pass on a theory not advanced." Also see *Archer v. Gwinnett County,* 110 Ga. App. 442, 445 (138 SE2d 895); *Phillips v. State Farm &c. Co.,* 121 Ga. App. 342, 347 (173 SE2d 723).

But another fatal stumbling block confronts defendant, for that the sentence shows his activities were curtailed *in six counties only,* not in the whole of the State of Georgia. The language of the constitutional provision, Art. I, Sec. I., Par. VII (Code Ann. § 2-107) provides the following as to banishment for crimes, to wit: "Neither banishment *beyond the limits of the State,* nor whipping, as a punishment for crime, shall be allowed." (Emphasis supplied.) Hence, the present sentence, not purporting to banish the defendant beyond the limits of the state (but merely beyond the limits of six counties) is not a sentence of banishment within the purview of the above constitutional provision.

But even though the Constitution of Georgia expressly provides that punishment for crime *shall not include banishment beyond the limits of the state,* the majority have contrived to convince themselves that punishment for crime *shall not include banishment beyond the limits of a county!*

Why not? There is nothing in our Constitution which inhibits *banishment beyond the limits of a county* as punishment for crime. Nor is there any decision by the appellate courts of Georgia which inhibits *banishment beyond the limits of a county as punishment for crime.*

Where, then, does the majority find excuse for saying that banishment beyond a county is inhibited in Georgia? They cite no Georgia case, no Georgia statute, no Georgia constitutional provision. But they go to Corpus Juris Secundum, American Jurisprudence and to the decisions of the courts of New York, Maryland, and California (mostly from California), and they finally reach their destination by way of the "public policy" route; and argue that even though Georgia has no statute, no appellate court decisions, and no constitutional provision inhibiting banishment beyond a county as punishment for crime, *that public policy will not tolerate this form of punishment.*

But what is *Georgia's public policy?* What makes up the elements of *public policy in Georgia?* Surely, the majority knows that we do not go to California, nor do we go to New York, nor do we go to Maryland, to determine what the public policy of Georgia is. Those

other states are concerned with their own public policy, and not with ours. Each state determines its own public policy. Some states legalize gambling, but gambling is against our statutes and against public policy in Georgia. Some states legalize prostitution and bawdy houses, but such is against our statutes and public policy in Georgia.

Our appellate courts have spelled it out plainly, distinctly, and unmistakably, so that even a wayfaring man cannot be misled; *public policy is made up in Georgia by the statutes of Georgia, by the appellate court decisions in Georgia, and by the Constitution of Georgia.* "The only authentic and admissible evidence of *public policy of a state is its constitution, laws, and judicial decisions."* *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (3) (72 SE 295); *Bishop v. Act-O-Lane Gas,* 91 Ga. App. 154, 165 (85 SE2d 169). (Emphasis supplied.) Therefore, the lengthy decisions from California on public policy quoted by the majority relate to *public policy of California, not Georgia.*

Where does that leave the majority opinion in this case? The majority admits that Georgia has no statute, has no judicial decisions and has no constitutional provisions which inhibit banishment beyond a county as punishment for crime. Therefore, Georgia has no public policy against same. On the theory of public policy depends the entire thrust of the majority opinion, and it is therefore without any basis whatever.

To illustrate the absurdity of going to another state to determine what is the public policy of Georgia, some states could probate a sentence conditioned upon defendants' spending the time in a house of prostitution, another state could probate sentence on condition defendant spend the time in a gambling-house. Georgia could not legally do that because prostitution and gambling are against our statutes and such a sentence would therefore be void as against public policy. *Our public policy is made in Georgia, not in California, not in Nevada, or elsewhere.*

The majority argues that there is no statute in Georgia which *expressly permits banishment from a county as punishment for crime.* We reply that there is no statute in Georgia which *expressly forbids banishment from a county as punishment for crime.* Nor is there a

statute in Georgia which expressly permits a court to bar an attorney from practicing law during his service of a probated sentence, nevertheless the court has that power. *Yarbrough v. State,* 119 Ga. App. 46 (2) (166 SE2d 35). Nor is there a statute which expressly permits a judge to impose a restriction against defendant communicating with his wife during service of a probated sentence; nevertheless the court has such right. *Gay v. State,* 101 Ga. App. 225 (1) (113 SE2d 223). Also see *George v. State,* 99 Ga. App. 892, 893 (109 SE2d 883). The foregoing authorities also hold that the court has authority to impose restrictions *not specifically listed in the statute.*

More to the point, Code Ann. § 27-2711 specifically authorizes imposition of a condition in probation that the prisoner *"remain within a specified location."* That is what was done in the case sub judice; the trial judge named certain counties in which defendant could not use streets and highways during his period of probation. In *Henry v. State,* 77 Ga. App. 735, 737 (49 SE2d 681) it is held that as to conditions in probated sentence, the trial court may mould the sentence allowing defendant to serve outside jail, or other place of detention under supervision of court, *"and in such manner and on such conditions as it may see fit."* Also see *Cross v. Huff,* 208 Ga. 392 (67 SE2d 124).

Finally, let us go back to the constitutional provision which provides that punishment for crime *shall not include banishment beyond the limits of the state.*

What was the message the framers of our Constitution transmitted in this language? Undoubtedly, they meant that banishment beyond the limits of a *county was not inhibited.* "Inclusio unius est exclusio alterius" — (The inclusion of one is the exclusion of the other) is an ancient and honorable legal phrase which is quite meaningful and helpful in construing legal language. If *"county"* had been intended, they would have said *"county."* But having said *"state,"* the inclusion of that broad term excluded the more narrow term *"county."* Crossing a state line may often have vastly different and more serious consequences than the mere crossing of a county line.

I would affirm the judgment of the lower court for

all of the reasons hereinabove set forth.

### ADDENDUM TO DISSENT.

EVANS, Judge.

After an "en banc" hearing, the majority does not now dispute our contention that there is *at present* no public policy in Georgia against banishment beyond the limits of a county as punishment for crime. The majority now argues that such *should be* the public policy of Georgia and that the decision in this case will help to establish *future* public policy for the State of Georgia in this respect. But on what authority is the majority deciding the present case? Admittedly, at this moment Georgia has *no constitutional provision, no statute,* and *no judicial decisions* inhibiting banishment beyond a county as punishment for crime. As our public policy is made up of our Constitution, our statutes, and our judicial decisions (see *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (3) (72 SE 295) *Bishop v. Act-O-Lane Gas,* 91 Ga. App. 154, 165 (85 SE2d 169)), and as we have none on this subject at this moment, then it follows that *Georgia's public policy does not forbid banishment beyond a county as punishment for crime.* The majority has reached its conclusion and its destination without any supporting authorities. If one were to start at the present point (this decision reached by the majority opinion) and begin to climb downward towards the earth, at the half-way point he would find his ladder non-existent; and he would wonder what supports the top half of the ladder.