## 49909. PATTERSON v. THE STATE.

MARSHALL, Judge.

This is an interim appeal from an order overruling in part a motion to suppress evidence of marijuana growing in a field adjacent to a mountain home on a six-acre tract in Rabun County.

The sole issue is whether or not the trial judge in an evidentiary hearing on the motion to suppress was correct in overruling the motion to suppress the admission into evidence of the marijuana seized in a field near the house of the defendant.

Appellant lived in a house in a clearing surrounded by woods, accessible by a single access road through a

tunnel of trees. He has some six acres of which about four are cleared. The property is about a quarter of a mile east of the nearest through road and is reached by traveling some one hundred yards or more on a side road and then through a tunnel of trees about four hundred yards. The access road comes onto the southeast corner of the property with the dwelling house a short distance beyond. A GBI agent who testified at the hearing stated that he was dropped off by the sheriff in the near vicinity and that he tramped through the woods in a roundabout way and approached the appellant's property by crossing adjacent lands of other persons. He observed the appellant's property at some distance from the open field in which the marijuana was growing near the appellant's house. After observing the defendant and a woman in the act of gathering marijuana and placing it in a jeep, the agent returned to the county seat and obtained a search warrant from a magistrate. He and the sheriff and other officers returned the same day, raided the location, arrested the appellant and seized the growing marijuana. Some of it was sent to the state lab. The next day the marijuana field was destroyed by burning by law enforcement officers. The state lab later reported that all samples submitted to it were marijuana. The appellant was released from the jail the following day after making bond. At the hearing on the motion to suppress evidence, the state was unable to locate the affidavit on which the search warrant was issued. The trial judge overruled the motion to suppress as it related to evidence of marijuana growing in the open field on appellant's land citing Hester v. United States, 265 U. S. 57 (44 SC 445, 68 LE2d 898). The trial judge certified the ruling on this motion for immediate review. Relevant portions of the record necessary to an understanding of the case are as follows:

As to whether or not the GBI agent trespassed on appellant's land, the GBI agent testified: "Q. Well how do you know you didn't go on Mr. Patterson's property? A. Honestly I don't. I don't know where his property line was. I know I was careful not to cross any fences or what looked like land under cultivation. I would assume that may have been his fence and property line. So that was only thing that I had in mind was trying to avoid getting on the

property. To my knowledge, I didn't, but I don't know how much property he owns. Q. Is there a fence there, you say? A. I didn't cross any fences. I said I took special notice not to cross any fence, and this type of thing." As to whether or not marijuana was growing in appellant's field the agent testified: "Q. Where was the marijuana growing? A. The cornfield adjacent to the house and kind of curved back around behind the house. Q. Are you pointing up here to the north of the house? A. Around to the north side of the house, along there. Q. Were you able to see and recognize that as marijuana from there? A. I felt it was marijuana, yes, sir. Q. You had binoculars? A. Comparing it with the corn, it was, you could tell it wasn't corn. Q. You could tell it wasn't corn. A. It appeared to be marijuana. Q. Well how did it appear to be marijuana? A. By the physical appearance of the plants themselves, the pointed leaves. Q. Well there are a number of plants that have pointed leaves, isn't that true, Mr. Peters? A. Yes, sir, but based on that, with the information I'd received earlier, it was marijuana. I felt in my own mind that it was marijuana. I could think of no other crop that appears the same way that would be handled by a farmer the way that this was being handled. Q. Well how long did you observe? A. Five, ten minutes, maybe. Q. When you said it was being handled, how was it being handled in this five or ten minutes? A. There was a jeep and they was loading the stuff on the jeep, pulling the plants up, breaking them off and loading stuff on the back of the jeep, driving the jeep along the field and putting the stuff on. Q. Did you look at this with binoculars? A. Yes, sir." And as to the fact that the appellant was arrested at the same time the marijuana was seized, appellant testified: "Q. Is that a true and accurate representation of that area? A. Yes, sir. Q. And was that picture taken shortly after the arrest? A. They destroyed this back here and I got out that night and this picture was taken the next day." *Held:*

1. The difficulty of maintaining consistency in the opinion of the appellate courts, both federal and state, in this country as to search and seizure law is readily apparent. As Justice White wrote (p. 520) in dissenting in Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564): "Aware of these inconsistencies, the Court

admits that 'It would be nonsense to pretend that our decision today reduces Fourth Amendment law to complete order and harmony' . . . But, it concludes that logical consistency cannot be attained in constitutional law and ultimately comes to rest upon its belief 'that the result reached in this case is correct . . .' It may be that constitutional law cannot be fully coherent and that constitutional principles ought not always be spun out to their logical limits, but this does not mean that we should cease to strive for clarity and consistency of analysis. Here the Court has a ready opportunity, one way or another, to bring clarity and certainty to a body of law that lower courts and law enforcement officials often find confusing. Instead, without apparent reason, it only increases their confusion by clinging to distinctions that are both un-explained and inexplicable."

2. In the brief of able counsel for appellant after citing the holding in Hester v. United States, 265 U. S. 57, supra, counsel asserts that the decisions of the federal courts have steadily eroded the holding in Hester and are moving away from that holding. Yet, counsel cites no holdings of the United States Supreme Court which directly overruled Hester. See *Anderson v. State,* 133 Ga. App. 45 (1) (209 SE2d 665). As to the use of binoculars relative to the question of illegal search while the defendant was in an open field or unprotected area, see annotation in 48 ALR3d 1185.

3. In this case sub judice a GBI agent observed the appellant in the act of harvesting marijuana in a field some one or two hundred yards from his house, which was in a clearing in woods with corn planted apparently in between the rows of marijuana. It is not clear from the evidence whether or not the agent ever set foot on the appellant's land, but he observed the appellant in an illegal activity. The agent could have arrested the appellant without a warrant at the time since he was in the act of committing a felony. Code § 27-207 provides: "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Instead,

the agent chose to return to the county seat and obtain a search warrant, which was done. Because the affidavit originally attached to the search warrant could not be located at the hearing on the motion to suppress evidence, the search warrant was not admitted into evidence. The agent, together with the sheriff and other agents, returned to the appellant's land and arrested the appellant for possession of marijuana, which arrest was proper under the aforesaid Code section authorizing an arrest without a warrant when the offense is committed in his presence. Under the decisions of the state and federal courts, it was proper to seize the illegal evidence when the appellant was lawfully arrested. Code Ann. § 27-301 (d); *Rockholt v. State,* 129 Ga. App. 99 (198 SE2d 885).

4. Other United States Supreme Court cases relating to the case sub judice are United States v. Lee, 274 U. S. 559, 563 (47 SC 746, 71 LE2d 1202), which included the following: "The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motor boat was boarded. Such use of a searchlight is comparable to the use of a marine glass or field glass. It is not prohibited by the Constitution. Compare Hester v. United States, 265 U. S. 57. A later trespass by the officers, if any, did not render inadmissible in evidence knowledge legally obtained." And in Olmstead v. United States, 277 U. S. 438, 465 (48 SC 564, 72 LE2d 944, 66 ALR 376), the following appears: "Justice Bradley in the Boyd case, and Justice Clark in the Gouled case, said that the Fifth Amendment and the Fourth Amendment were to be liberally construed to effect the purpose of the framers of the Constitution in the interest of liberty. But that cannot justify enlargement of the language employed beyond the possible practical meaning of houses, persons, papers and effects, or so to apply the words search and seizure as to forbid hearing or sight. Hester v. United States, 265 U. S. 57, held that the testimony of two officers of the law who trespassed on the defendant's land, concealed themselves one hundred yards away from his house and saw him come out and hand a bottle of whiskey to another, was not

inadmissible. While there was a trespass, there was no search of person, house, papers or effects [cits.]." In Katz v. United States, 389 U. S. 347, 360 (88 SC 507, 19 LE2d 576), Mr. Justice Harlan, in a concurring opinion with the majority, cites Hester and points out the contrasting nature of a telephone booth and a field relative to the question of search and seizure. Also, in the same case, Justice Stewart, speaking for the majority (p. 351), states that: "What a person knowingly exposes to the public, . . . is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U. S. 206, 210 . . ." And in his dissenting opinion in Katz, Justice Black wrote: "The Fourth Amendment protects privacy only to the extent that it prohibits unreasonable searches and seizures of 'persons, houses, papers and effects.' No general right is created by the Amendment so as to give this Court the unlimited power to hold unconstitutional everything which affects privacy. Certainly, the Framers, well acquainted as they were with the excesses of governmental power, did not intend to grant this Court such omnipotent lawmaking authority as that. The history of governments proves that it is dangerous to freedom to repose such powers in courts." .

5. The case of *Black v. State,* 119 Ga. App. 855 (168 SE2d 916) is readily distinguishable from the case sub judice. In the *Black* case, the automobile engine or motor which was the subject of the investigation was not visible from the street or the property of another and the officers involved went on the property of Black, while he was away, without a search warrant and proceeded to examine and identify the engine as the stolen property. The fact that he was not arrested until he returned later further distinguishes the facts of *Black* from the case sub judice. In the case sub judice the marijuana was readily identified by the GBI agent, and the fact that he qualified his identification somewhat, does not render the seizure illegal. He stated that he had had considerable experience in identifying marijuana, and it is not reasonable to require that a laboratory test be made of growing marijuana before it be seized.

6. Since the marijuana was observed in an open field in the appellant's presence and the presence of another no

search was involved and the defendant was later lawfully arrested on the premises and the marijuana seized incident thereto, the motion to suppress was properly overruled.

*Judgment affirmed. Deen, P. J., and Stolz, J., concur.*

SUBMITTED NOVEMBER 7, 1974 — DECIDED JANUARY 7, 1975 — REHEARING DENIED JANUARY 21, 1975 —

*Al Horn,* for appellant.