## 60223. GIDDENS v. THE STATE.

McMURRAY, Presiding Judge.

Law enforcement officers, conducting drug-related investigations in Berrien County and Lowndes County, were conducting surveillances of certain residences. Defendant was placed under surveillance, after he visited one of these residences, and was trailed to a location in Berrien County where he disappeared into a field near the Georgia Sheriff's Boys Ranch. The officer, upon making inquiry at the ranch, learned the defendant's identity and after reporting back to his superiors, returned the next day with additional officers to the field.

The field was surrounded by a wire fence (four strands of barbed wire) and on the field was a storage building in which the officers found marijuana that was being processed. The building also contained hoses, fertilizer and cultivating equipment. The officers also found marijuana growing amidst the corn planted in the field. The officers withdrew and set up a surveillance on the building which was the only building on the field.

Several days later the officers felt that they had been spotted by the defendant while attempting to set up an additional surveillance so they arrested him at that time. Following the arrest the officers and defendant traveled to the field where certain evidence, including substantial quantities of marijuana (plants ranging 6 to 15 feet in height), was confiscated.

The defendant's motion to suppress evidence confiscated from the field and the building thereon was denied. The defendant was indicted, convicted of the offense of possession of marijuana with intent to distribute and sentenced to 10 years' imprisonment, and payment of a fine of $5,000. The last 4 years of the sentence were to be served on probation upon payment of the fine and costs of $3,032.30,

and other conditions. Defendant appeals. *Held:*

1. The defendant contends that both the visit to the field by the officers prior to his arrest and the visit subsequent to his arrest during which the evidence was actually seized were unreasonable searches and seizures. The defendant relies heavily upon the reasoning of Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576), arguing that he had a reasonable expectation of privacy in the cornfield. The state relies upon the so-called "open field" doctrine set forth in Hester v. United States, 265 U. S. 57, 59 (44 SC 445, 68 LE 898), and emphasizes that the uncontroverted evidence shows that the building located on the property contained no personal items or facilities for sleeping or any other facilities which would infer that the building was used as an office or dwelling.

There simply is no question involved in this case which brings into play the traditional rules applied to one's dwelling or surrounding curtilage. Various cases cited by the parties dealing with such issues are inapposite. Particularly, *Kelley v. State,* 146 Ga. App. 179 (245 SE2d 872) is inapposite as in that case the defendant's expectation of privacy arose from the fact that the area in question was within the curtilage of a dwelling (a tent).

Law enforcement officers did not see any of the growing marijuana or that which was being processed until after they had crossed the wire fence surrounding the field. The wire fence of a type commonly used to restrict movement of livestock posed little obstacle to the entrance of law enforcement officers who were only later aware that the gate to the field was locked. The officers received no notice prior to their entry that the owner or rightful occupant forbade such entry. See Code Ann. § 26-1503 (b) (2) (Ga. L. 1968, pp. 1249, 1285; 1969, pp. 857, 859; 1979, p. 764).

Although Katz v. United States, supra, in setting forth the reasonable expectation of privacy test has altered the criteria for determining the applicability of the Fourth Amendment protection against unreasonable search and seizure when compared with some earlier cases, we do not believe that there has been any implied overruling of Hester v. United States, supra. Protected expectations of privacy under Katz v. United States, supra, must be reasonable. We do not believe that any expectation of privacy defendant had in regard to this field was reasonable under these circumstances.

We continue to adhere to our position that Hester v. United States, 265 U. S. 57, supra, remains a viable decision of the Supreme Court of the United States and binding on this court. See in this regard *Anderson v. State,* 133 Ga. App. 45, 46 (1) (209 SE2d 665); *Reece v. State,* 152 Ga. App. 760, 761 (1A) (264 SE2d 258); *Patterson v. State,* 133 Ga. App. 742, 745 (2) (212 SE2d 858). See also

*Kennemore v. State,* 222 Ga. 252, 254 (2) (149 SE2d 471).

2. During the state's closing argument to the jury the district attorney stated: "I don't believe any farmers were left on this jury . . . They were all stricken . . ." Defendant moved for mistrial on the basis of this argument contending that it injected facts which were not in evidence. However, a prosecutor is entitled to argue to the jury his version of what took place at the trial. *Bryant v. State,* 146 Ga. App. 43, 44 (2) (245 SE2d 333).

An additional motion for mistrial was made in regard to another portion of the state's closing argument to the jury. The language in question, however, did no more than call to the attention of the jury that the state has an interest in proper law enforcement (in this case, stopping the drug traffic). This argument was proper. *Demps v. State,* 140 Ga. App. 90, 91 (2) (230 SE2d 97).

3. Defendant contends that the trial court ignored the sentence hearing procedure required by Code Ann. § 27-2503 (Ga. L. 1974, pp. 352, 357), determined the sentence prior to the sentence hearing, and drafted the sentence prior to the hearing, simply filing this pre-prepared sentence after the pre-sentence hearing. Pretermitting the issue of whether such conduct is harmful error, the factual allegations upon which these contentions are based appear only in defendant's brief and are not supported by the record submitted to this court by the clerk of the trial court. This court may not decide cases upon the basis of factual allegations appearing only in the parties' brief and unsupported by the record from the trial court. *Young v. State,* 144 Ga. App. 712 (1) (242 SE2d 351). The burden of showing harmful error rests on the appellant. *Raymond v. State,* 146 Ga. App. 452, 453 (2) (246 SE2d 461).

4. The sentence of 10 years provided that the defendant be permitted to serve the last 4 years on probation conditioned on defendant's having paid the $5,000 fine assessed against him within 90 days of the date of final judgment on remittitur of any appeal and contingent upon the defendant's complying with a number of other conditions, including payment of court costs in the amount of $3,032.30, composed of the following expenses: $1,080 juror cost, $132 witness fees, $150 court reporter, $108 bailiff fees, $1,484.30 sheriff's cost for guarding field, harvesting and preserving the evidence, and $78 transcript of evidence. Defendant was to begin paying the above at the rate of $200 per month beginning 3 months after defendant's release from prison, same to be paid through the probation department and remitted directly to the county treasury when collected. The remaining error enumerated is to the assessment of the $3,032.30 court cost as a condition of probation. Clearly, not all of the costs above could be taxed against the defendant as court costs.

Generally, a defendant in a criminal case can be taxed with costs. "If convicted, judgment may be entered up against him for all costs accruing in the committing . . . [or] . . . trial courts, and by any officer pending the prosecution." See Code Ann. § 27-2801 (Constitution of 1976, Art. I, Sec. I, Par. XXI; Code Ann. § 2-121). Costs generally include all charges fixed by statute as compensation for services rendered by officers of the court in the progress of the cause. See *Markham v. Ross,* 73 Ga. 105 (1 (b)). Authority for fee costs for special criminal bailiffs is found in Code § 24-3202. The sheriff and court reporter are also officers of the court.

The defendant contends that the assessment of costs here is not authorized by statute and is thus illegal. Defendant argues further that the cost could not be intended to be part of the fine because the sentence also includes the maximum fine allowed under the provisions of Code § 79A-811 (j) (3) (Ga. L. 1979, p. 1258). In *Peters v. State,* 9 Ga. 109, it was held that railway mileage fare could not be included in the bill of costs against the defendant charged with burglary. Indeed, in *Stamper v. State,* 11 Ga. 643 (2), it was held that "all officers charging costs, . . . must always show the *authority of the law* to do so." It is contended here that the expenses of the sheriff in guarding the marijuana field and harvesting and preserving it would not fall within the definition of costs which can be charged to the defendant. See Code § 24-2823 (as amended, Ga. L. 1943, p. 591; 1945, p. 144; 1945, p. 221; 1955, pp. 383, 384; 1968, pp. 988, 991; 1976, pp. 702, 705; 1979, pp. 988, 992) as to costs in criminal cases.

But the above expenses have not been taxed against this defendant as costs. Merely probation has been conditioned upon the payment of same in accordance with the conditions of probation. Code Ann. § 27-2711 (Ga. L. 1956, pp. 27, 32; 1958, pp. 15, 23; 1965, pp. 413, 416) provides for certain terms and conditions of probation. However, this statute states that the court shall determine the terms and conditions of probation and "may provide" certain conditions of probation set forth therein. It does not state that other conditions of probation may not be placed upon the probationer in order to allow him to serve the sentence outside the confines of the penitentiary. In *Collett v. State,* 131 Ga. App. 411 (206 SE2d 70), banishment of the defendant from seven counties in a metropolitan area as a condition of suspension of the sentence was held by this court to violate public policy. However, in *State v. Collett,* 232 Ga. 668 (208 SE2d 472), the judgment of the Court of Appeals was reversed, the Supreme Court stating at page 671 as follows: "When this [banishment from the 7 counties] is considered against the background of the power and authority a trial judge has under the law to suspend a sentence under such rules and regulations as he deems proper, we cannot agree that

the present sentence 'is illegal and void,' as contended by the defendant." The Supreme Court was there of the opinion that the banishment from the 7 counties for a period of 12 months was not necessarily shown to be unreasonable or otherwise fails to bear a logical relationship to the rehabilitative scheme of the sentence pronounced for a drug crime.

Here we have the defendant attacking the probated portion of his sentence which is certainly in his favor in allowing him to serve 4 years of his 10 year sentence outside the confines of the penitentiary. We have found no authority which would prevent the court from determining the terms and conditions of his probation which is within the sound discretion of the court in probating it. The court could very well have imposed a ten year sentence upon the defendant without any portion of it being probated. We find no abuse of discretion by the court in requiring the above payments as a condition of probation.

*Judgment affirmed. Deen, C. J., Shulman, Birdsong and Sognier, JJ., concur. Quillian, P. J., Smith, Banke and Carley, JJ., dissent.*

ARGUED JULY 1, 1980 — DECIDED OCTOBER 10, 1980 —
REHEARING DENIED OCTOBER 28, 1980 —

*J. Converse Bright, Brooks E. Blitch, III, Berrien Sutton,* for appellant.

*Vickers Neugent, District Attorney, Charles R. Reddick, Lew S. Barrow, Assistant District Attorneys,* for appellee.

SMITH, Judge, dissenting.

The majority concludes that, since the area in question lies within a field, the Fourth Amendment is simply inapplicable. I respectfully dissent.

According to the majority, Fourth Amendment protection extends to a home or a curtilage, but not to a field. Notwithstanding some authority to the contrary, I do not believe the Fourth Amendment questions raised by this case can be resolved by resort to a mere labelling process. "[T]his effort to decide whether or not a given 'area,' viewed in the abstract, is 'constitutionally protected' deflects attention from the problem presented by this case. For (the Fourth Amendment protects people, not places). What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U. S. 206, 210; United States v. Lee, 274 U. S. 559, 563. But

what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See Rios v. United States, 364 U. S. 253, Ex parte Jackson, 96 U. S. 727, 733." Katz v. United States, 389 U. S. 347, 351-352 (88 SC 507, 19 LE2d 576) (1967). "[W]herever an individual may harbor a reasonable 'expectation of privacy' . . .he is entitled to be free from unreasonable governmental intrusion." Terry v. Ohio, 392 U. S. 1, 9 (88 SC 1868, 20 LE2d 889) (1967); *Kelley v. State,* 146 Ga. App. 179 (245 SE2d 872) (1978). "[A]n appropriate test is whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion." People v. Edwards, 80 Cal. Rptr. 633, 635 (458 P2d 713) (1969). "The test of reasonableness is dependent upon the totality of facts and circumstances involved in the context of each case . . ." Phelan v. Superior Court, 151 Cal. Rptr. 599, 603 (App. 1979).

The majority bases its decision on Hester v. United States, 265 U. S. 57 (44 SC 445, 68 LE 898) (1924). The federal cases are in conflict as to the meaning of Hester. See United States v. Freie, 545 F2d 1217 (9th Cir. 1976); Wattenburg v. United States, 388 F2d 853 (9th Cir. 1968); Atwell v. United States, 414 F2d 136 (5th Cir. 1969); United States ex rel. Saiken v. Bensinger, 546 F2d 1292 (7th Cir. 1976). See also People v. Lashmett, 71 Ill. App. 3d 429 (389 NE2d 888) (1979). Nonetheless, there appears to be a tendency to apply the "open fields" doctrine in cases where the evidence shows the area in question to be readily accessible and open to the public (see Air Pollution Variance Board v. Western Alfalfa Corp., 416 US 861 (94 SC 2114, 40 LE2d 607) (1974); McDowell v. United States, 383 F2d 599 (8th Cir. 1967)), or where the indicia of private ownership fail to demonstrate a reasonable expectation of privacy (see United States v. Hare, 589 F2d 242 (5th Cir. 1979); People v. Bradley, 81 Cal. Rptr. 457 (1969); State v. Charvat, 573 P2d 660 (Mont. 1978)). The Georgia cases cited by the majority appear to be supportive of this conclusion. See also *Frazier v. State,* 138 Ga. App. 640, 645-646 (227 SE2d 284) (1976). In my view, a determination based upon reasonable privacy expectations is clearly preferable to a determination based upon a characterization of the place of search because it more closely reflects the core value expressed by the Fourth Amendment — freedom from unreasonable governmental intrusion. See Berger v. New York, 388 U. S. 41, 53 (87 SC 1873, 18 LE2d 1040) (1967).

The area in question in the instant case is located in a sparsely populated rural county. The property is surrounded by a barbed wire fence. A photograph of the entrance to the property shows that a "no trespassing sign was posted, although the testimony is in conflict as to whether the sign was posted at the time of the search. The entrance to

the property was blocked by a large metal gate. At the time of the search, the gate was locked. The area where the marijuana was located was surrounded by hills and dense foliage. The area could not be seen from adjoining property. Under these circumstances, I must conclude that appellant had an "actual subjective expectation of privacy" and that the expectation was "objectively reasonable." United States v. Freie, supra at 1223. See State v. Wert, 550 SW2d 1 (Tenn. Crim. App. 1977); State v. Larkin, 588 SW2d 544 (Tenn. 1979); Phelan v. Superior Court, supra. In terms of the "open field" doctrine, the area in question was not "open."

For the reasons stated above, I believe the investigatory search undertaken by the police in this case was subject to the Fourth Amendment. The state has shown no exigent circumstances relieving the police of their duty to obtain a search warrant. Indeed, the state has not demonstrated that the police ever had probable cause to search. I cannot subscribe to the view that, merely because the tool shed and surrounding property cannot be characterized as a house and curtilage, the police had unlimited authority to conduct a general exploratory search of both. Appellant clearly had a legitimate expectation of privacy with respect to the area in question. Without probable cause and a warrant, the area was not subject to police intrusion. Under the circumstances of this case, the motion to suppress should have been granted.

BANKE, Judge, dissenting in part.

I concur in the majority opinion with the exception that I do not agree that a "house" must be a "dwelling house" to come within Fourth Amendment protection. The Amendment merely states "houses," and there is no constitutional requirement that non-dwelling houses be within the curtilage to acquire protection. I would suppress the evidence found in the house.

It is well settled that persons cannot expect privacy in an "open field," nor is an "open field" covered by the Fourth Amendment in these circumstances. I would overrule the motion as to evidence from the "open field."

CARLEY, Judge, dissenting in part.

I think that the key to the proper decision in this case is a determination of whether or not as to a particular area or enclosure the defendant had a reasonable expectation of privacy. As Judge Smith states in his dissent, "the Fourth Amendment protects people, not places." Katz v. United States, 389 U. S. 347, 351 (88 SC 507, 19 LE2d 576) (1967). Nevertheless, I agree with the majority's application of controlling precedent to hold that in this case the

defendant had no such reasonable expectation of privacy as to the "open field." However, I agree with Judge Banke's separate dissent to the effect that the storage building was a structure in which the defendant had the necessary expectation of privacy so that the protection of the Fourth Amendment applied. Thus, while I concur in the majority's affirmance of the trial court's denial of the motion to suppress as to the evidence found in the "open field," I would reverse as to the denial of the motion with respect to the material found in the storage shed. See *Hardwick v. State,* 149 Ga. App. 291 (254 SE2d 384) (1979), and *Buday v. State,* 150 Ga. App. 686 (258 SE2d 318) (1979).

I am authorized to state that Presiding Judge Quillian joins in this dissent.