## A93A0759. WIGGINS v. THE STATE.
(432 SE2d 113)

BLACKBURN, Judge.

The defendant, Larry Eugene Wiggins, was convicted by a jury of one count of incest and one count of aggravated sodomy and sentenced to twenty years' imprisonment on each charge, to serve concurrently. The defendant's motion for new trial was denied by the trial court, and this appeal followed.

R. L. W., the defendant's daughter, was eighteen years of age at the time of his indictment on July 14, 1992, but the defendant began what became a pattern of sexual exploitation when she was only five years old. At the trial, R. L. W. testified that she resided in Gwinnett County from the latter part of 1989 to 1992. During this period, her father forced her to engage in sexual intercourse with him and "made [her] give him a blow job" at least once or twice a week, on a continuous basis. When she was five years of age, the defendant frequently fondled various parts of her body, including her vagina, and by the time she was eight, the defendant began engaging in sexual intercourse with her. It was precisely because of his position of authority as her father that he was able to begin and continue the sexual exploitation. As a means of guaranteeing her silence, the defendant threatened to remove his daughter from the family home and threatened to kill her if she disclosed the sexual encounters, that is, their "secret." Because of the fear induced by her father's threats, R. L. W. did not inform anyone of her father's sexual abuse until 1992, when she disclosed her history of sexual abuse to a teenage friend at a movie theater. Thereafter, Charlene Boyd, the mother of the teenage friend, was informed by R. L. W. of her father's sexually abusive behavior. Mrs. Boyd subsequently notified the Gwinnett County Police Department of the allegations, and the defendant was arrested.

Mrs. Boyd testified that R. L. W. had been crying and upset on the day that she informed her of the defendant's sexual abuse. During a conversation with the defendant following the disclosure of the abuse, Mrs. Boyd informed the defendant that R. L. W. did not want to return to the family home. Although Mrs. Boyd did not discuss the allegations of sexual abuse, the defendant immediately denied having sex with his daughter. During his trial testimony, the defendant denied doing "anything that was improper with [his] daughter at any time regarding sex." He stated that his daughter fabricated the sexual abuse allegations to get back at him for spending more time with his son. He also implied that his daughter was retaliating against him for restricting her contact with various boys. In reference to his conversation with Mrs. Boyd, the defendant declared that he never "told her that [he] had any kind of relationship with [his] daughter at any time."

1. In his first enumeration of error, the defendant contends that the trial court erred in denying his motion for directed verdict and subsequent motion for new trial because the state failed to prove the essential elements of aggravated sodomy. We disagree.

" '(Incest) . . . as experience shows, is generally the act of a man upon a woman, over whom, by the natural ties of kindred, he has almost complete control, and generally he alone is to blame. There is a *force* used, which, while it cannot be said to be that violence which constitutes rape, is yet of a character that is almost as overpowering.' [Cit.]" *Richardson v. State*, 256 Ga. 746, 747 (353 SE2d 342) (1987). " 'Sexual acts directed to children are, in law, forcible and against the will. [Cit.]' [Cit.] Further, evidence of a victim's lack of resistance induced by fear authorizes a finding of force." *Callahan v. State*, 203 Ga. App. 898, 899 (418 SE2d 157) (1992). "The pattern of sexual exploitation presented in this case was . . . as a matter of law, forcible and against the will, because of the [daughter's] age at onset, and because of her familial relationship with [the defendant]." *Richardson*, supra at 747.

Only "[w]here there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty' as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal to which the defendant is entitled under the evidence. . . ." OCGA § 17-9-1 (a). Where there are significant conflicts in the evidence regarding material issues, it cannot be said as a matter of law that the evidence, together with reasonable inferences and deductions therefrom, "demands" a verdict of acquittal. *Elzey v. State*, 168 Ga. App. 633 (309 SE2d 906) (1983). "It is for the jury to weigh the evidence, and for the appellate court only to determine whether there was sufficient evidence to support the verdict." Id.

In the instant case, there were significant conflicts in the evidence regarding whether the defendant committed the offense of sodomy, and therefore "it cannot be said as a matter of law that the evidence, together with reasonable inferences and deductions therefrom, 'demanded' a verdict of acquittal." Id. Although the defendant asserts that the term "blow job" is vague and lacking in definition, in *Anderson v. State*, 142 Ga. App. 282, 283 (235 SE2d 675) (1977), this court considered the vagueness and indefiniteness of the same term, and noted "that jurors, who are presumedly intelligent [cit.], also can be presumed to have some knowledge of slang expressions in common parlance in the vernacular. It would be completely unrealistic to require that witnesses, many of whom are unlearned or have limited vocabularies, describe the acts constituting the commission of crimes in statutory or technical language in order to prove the commission of

such acts." Id. Accordingly, we find that the testimony of the defendant's daughter that she was forcefully induced to endure the acts of sodomy and give the defendant a "blow job" was sufficient to authorize the jury's finding that the defendant is guilty, beyond a reasonable doubt, of aggravated sodomy. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Callahan v. State*, supra; OCGA § 16-6-2.

2. The defendant also asserts that the trial court erred in overruling his motion for directed verdict in that the state failed to prove that he had sexual intercourse with his daughter within four years of the commission of the crime, as required by OCGA § 17-3-1 (c). On the contrary, the defendant's daughter testified that from the latter part of 1989 until 1992, the defendant engaged in sexual intercourse with her at least once or twice a week. "The period of limitation runs from the commission of the offense to the date of the indictment." *Cain v. State*, 144 Ga. App. 249 (1) (240 SE2d 750) (1977). However, "[t]he date of the offense need not be proved with preciseness, but only that it occurred during the period of limitation." Id. Inasmuch as the defendant was indicted on July 14, 1992, for sexual offenses which occurred between January 1, 1990 and March 31, 1992, we conclude that the offenses were prosecuted by the state within the statutory period. Consequently, this enumeration is without merit.

3. The defendant further contends that the trial court erred in overruling his motion for directed verdict as the state failed to prove that the incest occurred within Gwinnett County. Although he does not assert that venue was improper in Gwinnett County, he asserts that the state did not present sufficient evidence of venue. The defendant admits that he failed to contest venue at trial, and this court has repeatedly held that "enumerations of error which raise questions for the first time on appeal present nothing for decision." (Citations and punctuation omitted.) *Meriwether v. State*, 204 Ga. App. 113, 115 (3) (418 SE2d 451) (1992).

"Generally, criminal actions must be tried in the county where the crime was committed. OCGA § 17-2-2 (a). And, venue must be established beyond a reasonable doubt. [Cit.] However, when the evidence is not conflicting [on the issue of venue] and when no challenge to venue is raised at trial, slight evidence is sufficient to prove venue." *Minter v. State*, 258 Ga. 629 (1) (373 SE2d 359) (1988). Here, the evidence undisputably shows that the offenses occurred in Snellville and Lawrenceville, Georgia, cities within Gwinnett County. Because there is no evidence conflicting with the conclusion that the offenses were committed in Gwinnett County, we find this evidence sufficient to establish venue in Gwinnett County.

4. The defendant also contends that the trial court erred in allowing his daughter to testify to a pattern of sexual abuse exhibited

toward her by the defendant as the procedure failed to provide him with proper notice to enable him to prepare his defense. The record shows that the defendant was provided with advance notice of his daughter's statement to the police which discussed the defendant's pattern of sexually abusive treatment towards her. However, his daughter's testimony at trial of the defendant's pattern of sexual misconduct toward her was not admitted as evidence of similar transactions, but was admitted as substantive evidence in support of the charge of aggravated sodomy because the offense was performed by force and against the will of his daughter. Therefore, we conclude that the trial court did not err in admitting this evidence. Moreover, as this court discussed in *Murphy v. State*, 195 Ga. App. 878, 880 (5) (395 SE2d 76) (1990), "since the testimony concerned acts against [the] victim in the case which, although not immediately related in time and place, were part of a continuous pattern, and considering all the evidence of [the defendant's] guilt, it is highly probable that such error, if any, did not contribute to [the defendant's] conviction."

5. Lastly, the defendant asserts as error the trial court's refusal to allow evidence of disputes between the defendant and his daughter regarding her sexual relations with boys. We disagree.

Under OCGA § 24-2-3, "[i]n any prosecution for rape, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses. . . ." In *Murphy*, supra at 880, this court recognized that this statute barred evidence of the past sexual behavior of victims in incest actions. Accordingly, the trial court's exclusion of this evidence was not erroneous.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED MAY 26, 1993.

*Moore & Davidson, Johnny R. Moore*, for appellant.
*Daniel J. Porter, District Attorney, Brenda J. Bernstein, Assistant District Attorney*, for appellee.