A94A1910, A94A1911. THE STATE v. BARRETT (two cases).
(451 SE2d 82)

BEASLEY, Presiding Judge.

In May 1991, Barrett, then Mayor of the City of Baldwin, was charged in indictment 91-CR76 with one count of interference with property of a municipality, OCGA § 16-7-24 (a), and two counts of misdemeanor theft by taking, OCGA § 16-8-2. He was also charged in indictment 91-CR77 with one count of felony theft by taking, OCGA § 16-8-2, one count of first degree forgery, OCGA § 16-9-1, and one count of theft by deception, OCGA § 16-8-3.

Barrett and the State negotiated a plea in return for first offender treatment on the felony theft by taking and forgery counts of 91-CR77 and orders of nolle prosequi on all other counts. The court accepted the plea and sentenced Barrett to five years probation as a first offender. See OCGA § 42-8-60 et seq. As part of the bargain, Barrett signed an agreement with the district attorney which provided that "the defendant, Tommy Lee Barrett, hereby agrees that he will resign as Mayor of Baldwin, and he will never again seek, run for, nor accept election or appointment to any public office. Should [he] ever default in this agreement, the State shall have the right to prosecute the defendant and the defendant shall be subject to prosecution in the Courts of this State or the United States, on any of the above cases, counts or alleged crimes regardless of any statute of limitations, right to speedy trial, or any other bar to prosecution." The court's order specified as a condition of probation that Barrett would not "seek, run for, nor accept election or appointment to any public office." He did resign as mayor.

Barrett was granted discharge from probation on December 26, 1992, well before the designated five years had passed. In December 1993 he was again elected Mayor of Baldwin. On January 10, 1994 he

was reindicted on all charges, with indictment 94-CR1S corresponding to original indictment 91-CR76, and indictment 94-CR2W corresponding to original indictment 91-CR77.

Barrett moved to dismiss the first two counts of indictment 94-CR2W on the basis of double jeopardy and the First Offender Act, OCGA § 42-8-60 et seq., and moved to dismiss all counts on both indictments on the grounds that he had successfully completed his sentence on the charges and that the reindictments were violative of due process and contrary to his plea agreement. After a hearing, the court dismissed all charges on indictment 94-CR1S and the first three charges of indictment 94-CR2W (i.e., the two counts of theft by taking and the count of first degree forgery).[1] The court determined that the plea agreement's prohibition on Barrett's seeking public office did not survive the discharge of probation and that the two charges on 94-CR2W to which Barrett had originally pled guilty were barred by double jeopardy.[2] The court analyzed the remaining charges on both indictments under the statute of limitation and all were dismissed except for the theft by deception count on 94-CR2W.

In Court of Appeals Case No. A94A1910, the State appeals from the dismissal of the charges in indictment 94-CR1S. In Case No. A94A1911, the State appeals from the dismissal of the charges in indictment 94-CR2W. Barrett does not challenge by cross-appeal the court's refusal to dismiss the fourth count of indictment 94-CR2W.

In attempting to enforce the provisions of the plea agreement, the State cannot rely on the court-imposed condition of probation that Barrett not seek office; this was a condition of probation and ceased when probation ended. See *Whitehead v. State*, 207 Ga. App. 891 (429 SE2d 536) (1993). The question is the effect of the "Agreement" between the State and the defendant on the renewed charges.

The issues in these cases are distinguished not by their procedural separation, but by whether the separate charges were dismissed because of double jeopardy or the statute of limitation. The two appeals are combined and the two issues are addressed separately.

1. On the first two counts of 94-CR2W, Barrett had already pled guilty, been sentenced, and completed sentence for the crimes. The court properly dismissed these charges on the grounds of double jeopardy notwithstanding any outside agreement to the contrary. See Ga. Const. 1983, Art. I, Sec. I, Par. XVIII; OCGA § 16-1-7 (a). The State

---

[1] Although one charge remains pending, this case is directly appealable by the operation of OCGA § 5-7-1 (a) (1). See *State v. Tuzman*, 145 Ga. App. 481, 482 (1) (243 SE2d 675) (1978).

[2] Although the court's order stated that these two charges were barred by "res judicata" the substance of the order was a finding of a bar by double jeopardy. See Ga. Const. 1983, Art. I, Sec. I, Par. XVIII; OCGA §§ 16-1-7; 16-1-8.

seeks to impose punishment not for the original crimes but for the later lawful act of seeking and obtaining public office. Reindictment on charges for which Barrett has completed sentence is merely a vehicle to fulfill that end. A person obviously cannot be twice convicted and punished for certain crimes because he did some other subsequent act. Barrett's agreement to submit to such prosecution by waiving any bar to prosecution, regardless of the failure to mention double jeopardy, is ineffectual in regard to double jeopardy. The court could not impose additional punishment for these two crimes as punishment for seeking public office. Nor is it even reasonable to construe the agreement to mean that the parties agreed for Barrett to be prosecuted and punished twice for the same crime if he committed a different and lawful act.

The State's attempt to extract additional punishment for these crimes would invade the court's authority in sentencing. See OCGA § 17-10-1. It had already once determined the appropriate punishment, which had been carried out. It was not error to dismiss the two charges upon which Barrett had already served sentence.

2. The court relied upon the statutes of limitation in dismissing all counts of indictment 94-CR1S and Count 3 of 94-CR2W. After an order of nolle prosequi, a second indictment can properly be returned within the applicable statute of limitation. See *State v. Davis*, 201 Ga. App. 533 (411 SE2d 555) (1991). " 'The period of limitation runs from the commission of the offense to the date of the indictment.' [Cit.]" *Wiggins v. State*, 208 Ga. App. 757, 759 (2) (432 SE2d 113) (1993). Both indictments at issue were returned on January 10, 1994. The period of limitation for the felonies in the indictments was four years, OCGA § 17-3-1 (c), and it was two years for the misdemeanors, OCGA § 17-3-1 (d).

The first count in indictment 94-CR1S was felony interference with property of a municipality, alleged to have occurred on June 30, 1989, more than four years before the January 10, 1994 indictment. The second count was misdemeanor theft by taking, alleged to have occurred March 14, 1990, more than two years before the indictment. The third and final count was also misdemeanor theft by taking, alleged to have occurred between April 12, 1990 and May 14, 1990, also more than two years before indictment.

On indictment 94-CR2W the first two counts were felony theft by taking and first degree forgery, the charges to which Barrett pled guilty and served sentence. The third count was felony theft by taking, alleged to have occurred on June 19, 1989, more than four years before the indictment. The fourth and final count was felony theft by deception, alleged to have occurred on March 23, 1990, within four years of the indictment; this was the only count the court did not dismiss.

The State concedes that, were it not for the plea agreement, the court was correct in concluding that the respective periods of limitation had run. It contends, however, that the plea agreement continued in effect after the discharge of probation and included an express waiver of the statutes of limitation or any other bar to the prosecution. Barrett contends that the statutes of limitation cannot be waived; the State asserts that they can and were.

OCGA § 17-3-1 (d) provides that "[p]rosecution for misdemeanors must be commenced within two years after the commission of the crime." OCGA § 17-3-1 (c), which provides the four-year limitation period for the felonies at issue here, is similarly worded and equally silent on waiver. Barrett does cite decisions from other jurisdictions for the proposition that the criminal statute of limitation is jurisdictional and controls the court's power to proceed. *People v. Sweet*, 254 Cal. Rptr. 567 (2nd Dist. 1989); *People v. Superior Court (Jennings)*, 228 Cal. Rptr. 357 (2nd Dist. 1986); *State v. McKinney*, 768 SW2d 178 (Mo. App. 1989).

In the Georgia case of *Dorsey v. State*, 237 Ga. 876 (230 SE2d 307) (1976), it was held that the statutory provision currently found in OCGA § 16-1-8 (c), barring prosecution for a crime already prosecuted in the federal courts, established a procedural right and therefore did not unconstitutionally divest the superior courts of their constitutional "exclusive jurisdiction" over the trial of felonies. See Ga. Const. 1983, Art. VI, Sec. IV, Par. I. That case also stated "a statutory bar to a criminal prosecution and a statutory limitation upon a criminal prosecution are procedural prohibitions that do not affect jurisdiction in any way." *Dorsey*, supra at 878. We conclude that in Georgia a statute of limitation on criminal prosecution does not affect the trial court's subject matter jurisdiction.

Although the statute of limitation does not divest the court of jurisdiction, that does not resolve whether the protection can be waived in the manner attempted here. The issue does not seem to have been directly addressed. See *Taylor v. State*, 44 Ga. App. 64, 74-75 (2) (160 SE 667) (1931) (analyzed statute of limitation under the assumption it was a personal right which defendant could "insist upon, or abandon, as may suit his purpose").

In examining whether Barrett's waiver of the statutes of limitation was effective, it must be noted that he received first offender treatment for crimes for which he could have been barred from seeking public office for ten years. Ga. Const. 1983, Art. II, Sec. II, Par. III. We need not decide whether the waiver's provision that he would "never" seek office would be enforceable beyond the ten-year period set out in the constitution because the State is attempting to enforce the agreement less than four years after the guilty plea.

The State argues that Barrett made a bargain with the district

attorney and must be kept to it. As the State notes, agreements between the State and criminal defendants can be considered as "contracts." *State v. Hanson*, 249 Ga. 739, 746 (3) (295 SE2d 297) (1982) (agreement not to prosecute in exchange for testimony primarily enforced); *Martin v. State*, 207 Ga. App. 861 (429 SE2d 332) (1993) (agreement to accept mandatory life sentence for two crimes enforced against defendant and constituted notice of "prior conviction" of mandatory life). Cases considering such agreements to be contracts, however, do not require the infusion of civil contract law into all criminal cases involving plea agreements. When examining plea agreements, "slavish adherence to contract law should be avoided." *Hanson*, supra at 746 (3).

Considering this agreement as a contract is appropriate here. Barrett received first offender treatment for crimes for which he could have been barred from seeking public office for ten years. Ga. Const. 1983, Art. II, Sec. II, Par. III. It was not mandatory that he receive first offender treatment; whether to grant first offender treatment to any defendant is in the discretion of the court. OCGA § 42-8-60; *Head v. State*, 203 Ga. App. 730, 731 (3) (417 SE2d 398) (1992). Thus, Barrett was relinquishing a right he could retain only if he was found not guilty, in exchange for more lenient treatment he was not guaranteed to receive. There was consideration.

Treating the plea agreement as a contract, however, does not establish whether the protection of the statutes of limitation is a right that Barrett could waive. The only argument Barrett puts forth for the proposition that the statutes of limitation cannot be waived concerns the court's jurisdiction, rejected above. Nor does the State advance any argument that the statutes of limitation may be waived, apparently relying solely on the position that they were waived in the agreement.

We see no absolute bar to a defendant's waiver of the protection afforded him by the statutes of limitation. " ' "[A] defendant may waive rights which exist for his own benefit, [but] he may not waive those which belong to the public generally." ' [Cits.]" *Collett v. State*, 131 Ga. App. 411, 417 (2) (206 SE2d 70) (1974), rev'd on other grounds, *State v. Collett*, 232 Ga. 668 (208 SE2d 472) (1974). The statutes of limitation do not affect the jurisdiction of the court and does not benefit the public generally; the only person who will ever enjoy this protection is a criminal defendant. If that defendant wishes to waive the protection, no other party is harmed. As the protection afforded by OCGA § 17-3-1 is statutory in origin, does not affect the court's jurisdiction, and is personal to an individual defendant, it is comparable to the speedy trial provisions of OCGA § 17-7-171, which can be waived. See *Mize v. State*, 262 Ga. 489, 490 (2) (422 SE2d 180) (1992). This comparability suggests that OCGA § 17-3-1 can also be

waived.

In addition to the waiver of statutory rights such as OCGA § 17-7-171, a defendant's ability to waive various rights given by the federal or state constitution is recognized. See *Doggett v. City of Manchester,* 201 Ga. App. 425 (411 SE2d 288) (1991) (waiver of right to jury trial); *Collins v. State,* 200 Ga. App. 71 (1) (406 SE2d 520) (1991) (waiver of right to confrontation). "Criminal defendants possess essentially two categories of constitutional rights: those which are waivable by defense counsel on the defendant's behalf, and those which are considered 'fundamental' and personal to defendant, waivable only by the defendant. . . . Examples of fundamental decisions which only the defendant is empowered to waive are entry of a guilty plea, [cit.], waiver of a jury trial, [cit.], and whether to pursue an appeal, [cit.]." *United States v. Teague,* 953 F2d 1525, 1531 (11th Cir. 1992). Barrett himself waived the right to the protection of the statutes of limitation.

If the stringent standard used to determine whether a criminal defendant has effectively waived his right to jury trial is applied to Barrett's purported waiver of the protection afforded him by the statutes of limitation, it appears the waiver was effective. " 'A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.' . . . [Cits.]" *White v. State,* 197 Ga. App. 162 (398 SE2d 35) (1990).

The record shows that Barrett signed a plea agreement, signed also by his counsel, explicitly waiving the right. Thus, we conclude that he was cognizant of the right waived and that the waiver was knowingly and voluntarily made. As Barrett can and did waive the statutes of limitation, the indictments can proceed without regard to the periods of limitation.

In ruling that the plea agreement's prohibition had no effect after the termination of Barrett's sentence, the court relied upon two cases. In *Wyche v. State,* 197 Ga. App. 148 (397 SE2d 738) (1990), the defendant was banished from five specific counties as a condition of his probation and was not to return "anytime." On appeal, the defendant argued that the banishment was unlimited and therefore void. Although the language of the condition suggested it could be construed to be indefinite, we held that it was a condition of probation and was in effect only during the four years of probation. Id. at 148-149 (1). In *Kerr v. State,* 193 Ga. App. 165 (387 SE2d 355) (1989), it was held

the trial court had erred in banishing defendants indefinitely from certain abortion clinics as a court-imposed condition for suspending their sentences.

The court's reliance on these cases was misplaced. Each one dealt with conditions imposed by the court in sentencing rather than the enforceability of a separate agreement between the district attorney and defendant. Barrett, while represented by counsel, waived his right to rely upon the statutes of limitation in exchange for first offender treatment. This waiver, as part of an agreement between him and the State, is enforceable beyond the execution of his sentence.

In conclusion, then, in Case No. A94A1910, concerning indictment 94-CR1S, the court erred in dismissing the charges because of the statutes of limitation. In Case No. A94A1911, concerning indictment 94-CR2W, the court properly dismissed the first two charges because of double jeopardy, but it erred in dismissing the third charge because of the statute of limitation.

*Judgment reversed in Case No. A94A1910; judgment affirmed in part and reversed in part in Case No. A94A1911. Andrews and Johnson, JJ., concur.*

DECIDED NOVEMBER 17, 1994 —
RECONSIDERATION DENIED DECEMBER 2, 1994 — 

*Michael H. Crawford, District Attorney,* for appellant.
*James N. Butterworth,* for appellee.